In re PROGRESSIVE WALLPAPER CORP.

In re LOTBINIERE LUMBER CO.

(District Court, N. D. New York. March 19, 1917.)

1. BANKRUPTCY ☞326—CLAIM—SET-OFF.

Claimant sold spruce pulp wood to the bankrupt, receiving notes in payment. Shipments in excess of the amount called for by the contract were made, and, the bankrupt complaining that the payment of freight embarrassed it, the parties entered into an agreement, reciting that the bankrupt had an interest in and a lien upon the wood to the extent of the freight payment, and that it should be entitled to use and appropriate such wood as fast as it might be needed in the prosecution of its business and the running of its mill, and should report the amount used each month, giving its notes in payment therefor at a fixed price per cord. The bankrupt used nearly two-thirds of the wood before bankruptcy proceedings were instituted. Bankr. Act July 1, 1898, c. 541, § 68, 30 Stat. 565 (Comp. St. 1913, § 9652), declares that in all cases of mutual debts or mutual credits between the estate of the bankrupt and a creditor the account shall be stated, and one debt shall be set off against the other, and that the balance only shall be allowed or paid. *Held,* that as the agreement between the parties recognized the obligation of the claimant to pay the freight on the wood shipped in excess of the contract, the claim for freight paid by the bankrupt should be offset against the notes held by claimant and the lien of the bankrupt estate on such wood extinguished.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514.]

2. BANKRUPTCY ☞326—PROCEEDINGS—AMENDMENT OF CLAIM.

In such case, though the claim as first filed stated there was no offset or counterclaim thereto, the bankruptcy court, being empowered to allow amendments, may allow the claim to be amended so as to set up the claim of the bankrupt and aver that it should be offset against that of the claimant so as to discharge the lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514.]

In Bankruptcy. In the matter of the bankruptcy of the Progressive Wallpaper Corporation. Application by the Lotbiniere Lumber Company for confirmation of the special master's report in bankruptcy, holding that the claim of the bankrupt estate against the Lotbiniere Lumber Company, secured by a lien on property of the company, might be set off against the claim of the company on notes of the bankrupt, and extinguished. Report approved and findings adopted.

See, also, 222 Fed. 87, 224 Fed. 143, and 230 Fed. 171.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This is an application for the confirmation, etc., of the special master's report in bankruptcy, holding that the claim of the bankrupt estate against Lotbiniere Lumber Company, which is secured by a lien on certain wood of that company, growing out of the payment of freight charges for the transportation of such wood, may be set off and thereby extinguished, against the claim of the said Lotbiniere Company on certain promissory notes of the bankrupt held by the Lotbiniere Company given for the purchase price of wood sold by the Lotbiniere Company to the said Wallpaper Company, and which formed a part of the same mass of wood on which the lien exists, and that the Lotbiniere Company, after deducting the amount of the claim of the Wallpaper Company, may prove and have allowed its claim for the balance of such notes. The trustee in bankruptcy asserts that such asserted right of set-off does not exist, and that he, representing the Wallpaper Company and its creditors, may assert its lien and collect its claim in full, leaving the Lotbiniere Company to the receipt of its percentage in distribution. The Lotbiniere Company also asks to amend its claim by setting up as an offset or counterclaim to its said claim the said demand of the bankrupt corporation.

John H. Booth, of Plattsburgh, N. Y., for petitioner Lotbiniere Lumber Co.

B. A. Pyrke, of Port Henry, N. Y., for trustee.

RAY, District Judge (after stating the facts as above). [1] The said Lotbiniere Lumber Company holds six notes of the Progressive Wallpaper Corporation, now bankrupt, amounting, exclusive of interest, to the sum of $16,271.50 given for wood sold and delivered. Most of the wood was delivered under and pursuant to a written agreement made about August 7, 1913. The contract called for from 1,000 to 1,500 cords of spruce pulp wood of specified lengths, and same was to be delivered f. o. b. on the cars at St. Georges Branch of Quebec Central Railway. Payments were to be made by check or interest bearing notes on or before the 20th day of each month for all wood delivered the preceding month. Deliveries were made under the contract, and notes were given. In November and December, 1913, and January, 1914, the Lotbiniere Company shipped wood to the Progressive Wallpaper Corporation considerably in excess of the total quantities called for by said contract or ordered, and same was unloaded on the grounds of said vendee at Plattsburgh, N. Y., and that corporation paid the freight thereon. After a time the overshipments were observed, and the attention of the vendor was called to the fact, and that payment of freight on excess shipments was an embarrassment financially to the vendee. The vendee was told to unload the wood and pay the freight and it would be adjusted later. But for a subsequent written agreement what was said and done would have passed title to this wood, all of it, to the Progressive Wallpaper Corporation. April 4, 1914, the parties met, and the following agreement was made:

"Memorandum of agreement, made this 4th day of April, 1914, between the Lotbiniere Lumber Company, of Lyster, Province of Quebec, a corporation, party of the first part, and the Progressive Pulp & Paper Company, of Plattsburgh, Clinton county, New York, party of the second part; witnesseth: That the party of the first part is the owner of fifteen hundred (1,500) cords of pulp wood piled upon the grounds and lands of the party of the second part at the party of the second part's mill at Plattsburgh, New York. That the said party of the second part has an interest in and lien upon said wood to the extent and amount of four ($4.00) dollars per cord, for freight and transportation charges thereon.

"It is further agreed between the parties hereto that the party of the second part shall and does have the right to use and appropriate said wood as fast as it may be needed by the party of the second part in the prosecution of its business and the running of its said mill. That when and after the party of the second part shall commence the use and consumption of said wood, it shall report to the party of the first part at the end of each month the amount of wood so used and consumed and shall accompany each report with its promissory note, payable to the party of the first part, at three months' time, for the amount of wood used and consumed during the month immediately preceding, figured at the rate of eight and fifty one-hundredths ($8.50) dollars per cord.

"Witness our hands and seals the day and year first above written.

"[Signed]  The Lotbiniere Lumber Company,
"Per W. H. Mitchell, Manager.
"Progressive Pulp & Paper Company,
"Per A. S. Derby, Treasurer."

This agreement recognized the title of the Lotbiniere Company in this excess wood, the claim or demand of the Progressive Wallpaper Company (Progressive Pulp & Paper Company) thereon for freight and transportation charges paid by it to the extent of $4 per cord, (about $6,000), and a lien thereon to that amount. It also gave the Progressive Corporation the right to take and use as much of this excess wood as it desired in its business, reporting the amount taken and sending its notes in payment at $8.50 per cord. At the time of the filing of the petition in bankruptcy 629.07 cords of this wood remained. Under the agreement the title was in the Lotbiniere Company, and the Progressive Wallpaper Corporation had its lien thereon under such agreement for $2,516.28, at $4 per cord. Thus the bankrupt corporation owed the Lotbiniere Company $16,271.50, as stated, and the latter company owed it $2,516.28 as security for which it had, under such agreement, a lien on such wood remaining. The wood subject to this claim belonged to the Lotbiniere Company as stated.

The Lotbiniere Company placed its notes in the hands of its attorneys, Weeds, Conway, and Cotter, at Plattsburgh, N. Y., but the facts were not stated to them as to this claim of the Progressive Corporation, and that firm filed a claim in bankruptcy on the notes for $16,271.50, and stated in said claim there was no offset or counterclaim thereto.

This proceeding seeks to amend the claim and set up the counterclaim of $2,516.28 and secure the set-off of that amount and have the claim on the notes allowed for the balance only. This is clearly just and proper if the $2,516.28 is properly a set-off under the bankruptcy law. The trustee claims it is not. These claims are mutual and grow out of the same transaction or transactions under the same agreements between these parties. As the Progressive Wallpaper Corporation took and used wood of the excess shipments under the agreement of April 4, 1914, at $8.50 per cord, and it gave its notes therefor, many of which are included in the proof of claim, the lien on such wood so taken and used was extinguished. The freight, after the excess shipments were discovered, was paid at the request of the Lotbiniere Company under a promise of adjustment, which meant payment. Subsequently there was a recognition and promise to pay the entire amount.

The dealings and claims were mutual. The account was a charge for wood sold and delivered on the one hand and credit for notes given and paid and freight paid on excess shipments of wood on the other. Under the last agreement each company owed the other. The Bankruptcy Act provides (section 68):

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

There can be no question that at the time the petition in bankruptcy was filed against the Progressive Wallpaper Corporation it owed the Lotbiniere Company $16,271.50 on its notes, and that the Lotbiniere Company then owed the Progressive Corporation $2,516.28 for freight charges paid. Collier on Bankruptcy (9th Ed.) p. 976, says:

"It seems that the rule with respect to set-offs is the same even though the claim of the creditor against the bankrupt is fully secured."

In Steinhardt v. National Park Bank, 120 App. Div. 255, 105 N. Y. Supp. 23, it was held that, in an action by a trustee to recover moneys of the bankrupt on deposit with the bank at the time the petition was filed, the bank was entitled to set off the amount of certain demand notes made by the bankrupt which it then held, but for which notes it held securities greater in value than the amount of the notes, and though by reason of their depreciation 17 months thereafter, when sold, the securities did not realize enough to pay the notes. In that case the trustee in bankruptcy sued the bank which held security for its debt and sought to have the offset allowed, while here the Lotbiniere Company presents its claim against the bankrupt estate, and seeks to have the secured claim of the bankrupt estate against it offset and thereby discharged. I discover no reason why this should not be done. It is urged by the trustee that the claim of the now bankrupt corporation was purely in rem, that is, by enforcing its claim or lien on the wood, and that no suit for the amount of the freight paid, etc., could have been maintained against the Lotbiniere Lumber Company even after the execution of the second written agreement made to adjust the matter. I cannot concur in this view. The claim of the Progressive Corporation was recognized, as was the obligation of the Lotbiniere Company to pay it. It was competent to show the whole transaction and the consideration for the agreement of April 4, 1914. It appeared that the freight was paid for the benefit of the Lotbiniere Company, and the now bankrupt made its claim, which was duly recognized.

[2] I do not doubt the power of this court to open up the matter and allow the proposed amendment to the claim presented. If the claim of the Progressive Wallpaper Corporation was and is a proper offset, there was a mistake of fact in making and presenting the claim of the Lotbiniere Company in the form and containing the statement referred to, and equity and justice demand that the error be corrected. The power of this court to allow claims to be amended is well settled. It seems to me very clear that if this now bankrupt corporation before its bankruptcy had sued the Lotbiniere Company to enforce its

claim, evidenced by the agreement to adjust; that is, repay the several sums paid for freight on the wood and later by the memorandum agreement, the defendant in such action could have offset the amount due it on the notes. See United States Trust Co. v. Western Contract Co., 81 Fed. 454, 468, 26 C. C. A. 472, 486, where Taft, C. J., said:

> "If B. is enforcing a lien against A.'s property, A. can remove the lien by paying to B. the amount secured by it. If so, why may he not be permitted to cancel the lien by forgiving B. the debt B. owes him; i. e., by setting it off? We are clearly of opinion that he may do so. Justice is thereby done, and circuity of action is avoided."

Now that bankruptcy has intervened, can it be said the Lotbiniere Company must accept its dividend on its entire demand and pay its indebtedness to the bankrupt in full? I can discover no justice in such a rule in such a case. See, also, 34 Cyc. 638, where it is said:

> "The insolvency of the party against whom the set-off is claimed is, as a broad general rule, held to be such a special equity as will induce a court of equity to take jurisdiction to allow the set-off."

The report of the referee is approved and his findings adopted.

There will be an order allowing the proposed amendment to the claim of the Lotbiniere Company, and the referee will offset the claim of the bankrupt corporation and allow the amended claim for the balance only.

The trustee will pay the special master $20 for his services as such from the assets of the estate, and the order will so provide.