In re PRINCESS BAKING CORPORA-
TION, a California Corporation,
Debtor.

BIG BEAR SUPER MARKET
NO. 3, Plaintiff,

v.

PRINCESS BAKING CORPORATION, a
California Corporation, Defendant.

Bankruptcy No. 80–1006–M.
Complaint No. C80–0166–M.

United States Bankruptcy Court,
S. D. California.

Aug. 8, 1980.

Stephen R. Brown, San Diego, Cal., for plaintiff.

Victor A. Vilaplana, Gray, Cary, Ames & Frye, David Buchbinder, San Diego, Cal., for debtor.

Raymond Theep, San Diego, Cal., for party in interest plaintiff Big Bear Super Market No. 3.

## MEMORANDUM DECISION

JAMES W. MEYERS, Bankruptcy Judge.

### I

On May 9, 1980, the plaintiff, Big Bear Super Market No. 3 ("Big Bear") filed this complaint naming the debtor, Princess Baking Corporation, ("Princess"), as defendant, seeking relief from the automatic stay, an accounting, a determination as to the dischargeability of debt, and rescission. On May 22, 1980, this Court issued an order setting a hearing on the defendant's motion to show cause why Big Bear should not be compelled to release funds. The hearing was held before this Court on June 27, 1980, at which time the parties submitted the issues presented on the declarations and exhibits filed and the argument of counsel. This memorandum decision is filed to announce this Court's findings and conclusions.

### II

### FACTS

On April 24, 1980, Princess filed a petition seeking protection under Chapter 11 of the United States Bankruptcy Code ("Code"). As of the date the petition was filed there existed various obligations between the parties.

Under two leases signed on October 29, 1979, Big Bear leased to Princess space to operate retail bakery businesses in its stores at 7611 Fay Avenue and 2707 Via de la Valle, both in San Diego County. As part of its responsibilities under these leases, Big Bear collected for Princess' retail sales of baked goods and remitted these receipts to Princess within four days after the close of the business week, less six and one half percent of the sales as a rental charge. As of April 24, 1980, Big Bear owed Princess $5,583.74 for the week ending April 20, and $2,033.08 for the subsequent three days through April 23. In turn Princess owed rental payments of $495.09, which is 6.5% of the total gross sales receipts then due to Princess. In addition, Big Bear admits it owed Princess an additional $4,357.82 for purchases of goods. Thus, as of the day Princess filed its petition, Big Bear owed it a total of $11,974.64 for outstanding sales collections and purchases.

Against these Princess had several obligations to Big Bear. First, there was the remaining principal balance of approximately $235,000.00 due on a promissory note dated October 29, 1979. Payments under this note commenced on December 5, 1979 and were current through March of 1980. This note was in conjunction with the sale to Princess of certain of Big Bear's bakery stock, fixtures and equipment. While this note was intended to be secured by the same goods and equipment, Big Bear concedes it is now in an unsecured status since it did not perfect its security interest in these assets prior to the petition being filed. Princess also owed $5,500 as the balance on inventory that it had also purchased from Big Bear. In addition, Princess was responsible for $1,854.05 in NSF checks, mainly payroll, it had issued and which were cashed by Big Bear.

On May 1, 1980, Princess made demand on Big Bear for payment of the amounts due as it needed funds to pay its employees. Big Bear apparently claimed a right of setoff, but on May 2, 1980 did advance $7,500 to Princess so it could make its payroll.

### III

### DISCUSSION

### A. AUTOMATIC STAY

In this dispute Princess has demanded payment from Big Bear of those amounts due it as of April 24, 1980. Big Bear has informed Princess that it has chosen to exercise its rights of setoff as of that date.

■ As a preliminary matter Princess contends that all creditor rights to setoff mutual obligations have been stayed under Section § 362(a)(7) and exercise of this right must await judicial determination. 11 U.S.C. § 362(a)(7). In this Princess is correct, for Big Bear did not exercise any setoff prior to the petition being filed and therefore it must obtain relief from the automatic stay. 4 *Collier on Bankruptcy* , § 553.05[2], at 553–37 (15th ed. 1979). *See* Ahart, *Bank Setoff Under the Bankruptcy Reform Act of 1978*, 53 Am.Bankr.L.J. 205, 207 (1979). Any setoffs accomplished by Big Bear after the petition was filed are of no effect pending resolution of the issues presented in this motion to show cause.

## B. STATUTORY BASIS FOR SETOFF

In considering this question of setoff we are directed to Section 553 of the recently enacted Code which is entitled "Setoff". 11 U.S.C. § 553. This section preserves, with some changes, the right of setoff in bankruptcy cases as was found in Section 68 of the former Bankruptcy Act ("Act"). H.R. Rep.No. 595, 95th Cong., 1st Sess. 377 (1977) (*"House Report"*). *See also* S.Rep.No. 989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787.

### 1. Under the Bankruptcy Act

Under the Act it has been noted that the right of setoff violates one of the basic impulses of bankruptcy law by not treating creditors equally in that it allows one creditor to receive more than another. *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir. 1979). *See In re Applied Logic Corp.*, 576 F.2d 952, 957 (2d Cir. 1978). But the right of setoff is of ancient derivation and has been embodied in every bankruptcy law the United States has enacted. *See* 4 *Collier on Bankruptcy, supra*, § 553.01, at 553–3–8. This recognizes the longstanding belief that an injustice would result from compelling a creditor to file its claim in full with the hope of fair treatment, while at the same time paying in full its indebtedness to the estate. *See Matter of Progressive Wallpaper Co.*, 240 F. 807, 811 (N.N.Y. 1917).

In applying setoff provisions the courts have held that they are permissive rather than mandatory and they are placed within the control of the Bankruptcy Court, which exercises its discretion in these cases upon the general principles of equity. *Cumberland Glass Mfg. Co. v. DeWitt*, 237 U.S. 447, 455, 35 S.Ct. 636, 639, 59 L.Ed. 1042 (1915); *Tucson House Construction Company v. Fulford*, 378 F.2d 734, 737 (9th Cir. 1967); *Riggs v. Government Emp. Financial Corp.*, 623 F.2d 68, 73 (9th Cir. 1980). Now this discretion was not intended to preclude setoff simply because the result would be "unjust." *In re Applied Logic Corp., supra*, 576 F.2d at 957. Instead the Court will disallow setoff only where the creditor has been guilty of a kind of conduct which is morally unsound and tending to undermine the integrity of modern business. *See Palmer v. Stokely*, 259 F.Supp. 776, 779 (W.Okla.1966). Whether setoff will be disallowed is dependent on the particular facts presented in each case. *In re Duplan Corp.*, 455 F.Supp. 926, 933 (S.N.Y.1978).

The application of these principles to operating cases presented considerable difficulty under the Act for the purpose of reorganization is to save a sick business, not to bury it and divide up its belongings. *Susquehanna Chemical Corp. v. Producers Bank & Tr. Co.*, 174 F.2d 783, 787 (3d Cir. 1949) (Chap. X). *See Baker v. Gold Seal Liquors*, 417 U.S. 467, 470, 94 S.Ct. 2504, 2506, 41 L.Ed.2d 243 (1974) (Railroad Reorganization). A debtor in a reorganization must keep its precarious cash inflow sufficient for operating purposes in order to survive. *Bohack Corp. v. Borden, Inc., supra*, 599 F.2d at 1166. Yet setoff has been allowed in numerous cases under Chapter XI. *In Matter of Olins Leasing Inc.*, 3 B.C.D. 605, 607 (S.N.Y.1977). This is because Section 302 of the Act made the provisions of Section 68 applicable to Chapter XI proceedings "insofar as they are not inconsistent with or in conflict with the provisions of [this] Chapter." *Western Land Planning v. Midland Nat. Bank*, 434 F.Supp. 616, 617 (E.Wis.1977). *See 6 Collier*

*on Bankruptcy,* § 9.09, at 1588 (14th ed. 1978). But on many occasions the courts have considered the compulsory application of Section 68 inappropriate to Chapter XI situations. *See e. g., In Matter of Olins Leasing, Inc., supra,* 3 B.C.D. at 608. These cases seem to be motivated by a desire to protect the financial status of the debtor and its ability to reorganize. *See Diversa-Graphics v. Management & Technical, Etc.,* 561 F.2d 725, 728 (8th Cir. 1977); *Western Land Planning v. Midland Nat. Bank, supra,* 434 F.Supp. at 617–18; *In re U. S. N. Co., Inc.,* 2 B.R. 468 (S.N.Y.1979). However, the only credible basis articulated for these decisions disallowing setoff in Chapter XI cases, is that in some cases allowance of setoff would undermine the debtor's ability to reorganize which in itself is inconsistent with the provisions of Chapter XI as it conflicts with the basic purposes of the Chapter. *See Bohack Corp. v. Borden, Inc., supra,* 599 F.2d at 1166; *Susquehanna Chemical Corp. v. Producers Bank & Tr. Co., supra,* 174 F.2d at 787.

### 2. Under the Bankruptcy Code

█ Under the Code the Congress recognized that:

> (t)he situation for the treatment of setoff in a reorganization case is very different than in a liquidation case. In order to accomplish a successful reorganization, it is important that business proceed as usual for the debtor. Setoff is an interruption in the conduct of business, and may have detrimental effects on the attempted reorganization.

*House Report,* at 183, U.S.Code Cong. & Admin. News 1978 at 6144. Given this sympathetic attitude it was assumed that the new Code would have at least retained discretion in the courts to bar setoff when it tends to frustrate the rehabilitation of the debtor. However, Section 553 is made applicable to Chapter 11 proceedings without specific regard for the unique problems associated with entities fighting for their financial lives. *See* 11 U.S.C. § 103(a) (Applicability of Chapters).

Congress clearly intended that the amount that may be setoff should be treated as tantamount to a perfected security interest. Ahart, *Bank Setoff Under The Bankruptcy Reform Act of 1978, supra,* 53 Am.Bankr.L.J. at 210; *House Report,* at 184–85, U.S.Code Cong. & Admin. News 1978 at 6145. Like any secured creditor under the Code, an entity with a right to setoff is assured that the automatic stay will be lifted unless it is adequately protected. *See* 11 U.S.C. §§ 361, 362; *In re Applied Logic Corp., supra,* 576 F.2d at 958 n.15; Orr & Klee, *Secured Creditors Under the New Bankruptcy Code,* 11 Unif.Com.C. L.J. 312, 335–36 (1979); *House Report,* at 185, U.S.Code Cong. & Admin. News 1978 at 6145.

### C. BIG BEAR'S RIGHT TO SETOFF FOR MUTUAL PRE–PETITION DEBTS

█ Within this general statutory framework we can examine Big Bear's entitlement to setoff. Under the terms of Section 553 a creditor may offset mutual debts owing to the debtor against claims of the creditor due from the debtor. These mutual debts must be owing when the petition is filed commencing the bankruptcy proceeding. 11 U.S.C. § 553(a). *See Avant v. United States,* 165 F.Supp. 802, 805 (E.Va.1958). Big Bear would argue that as of April 24, 1980, it should be allowed to setoff the entire $11,974.64 it then owed Princess. To be a proper setoff we must review the mutual debts owed by the debtor. The $5,500 balance due on the inventory purchases appear to satisfy the requirements of Section 553. The entire amount of the principal balance of the promissory note is likewise available for setoff even though only one monthly installment was due on the day the petition was filed. This is because bankruptcy proceedings operate to accelerate the principal amounts of all claims against the debtor, with the result that setoff may be asserted even though one of the debts involved is absolutely owing, but not then presently due. 4 *Collier on Bankruptcy, supra,* § 553.10[2] at 553–49; *House Report, supra,* at 353, U.S.Code

Cong. & Admin.News 1978 at 6308.[1] Thus, the entire amount due Big Bear is covered by mutual debts owed by Princess.

■ It should be noted that the $1,854.05 due for NSF checks issued by Princess and cashed by Big Bear appears to run afoul of Section 553(a)(2)(B). 11 U.S.C. § 553(a)(2)(B). This new provision bars set-off for claims against the debtor that were transferred to the creditor by a third party within 90 days of filing and while the debtor was insolvent.[2] 4 *Collier on Bankruptcy, supra,* § 553.08[2] at 553–44. This is certainly an ironic result given the considerable benefit conferred by Big Bear when it cashed the payroll checks. If these checks had been returned to Princess' employees, most of them being hourly wage earners, then great harm may have been done to staff morale with its negative effect on the chances for eventual reorganization.

■ It would appear, then, that Big Bear has a total of $11,974.64 which is eligible for setoff. But whether the automatic stay should be lifted to allow the setoff to take place requires consideration of Section 362(d). 11 U.S.C. § 362(d). Under this provision relief must be granted unless Big Bear's interest in the property is adequately protected. What constitutes adequate protection is stated in Section 361, which details several means available to fulfill this requirement. However, it is not an exclusive nor exhaustive listing. 11 U.S.C. § 361. The burden is on the debtor in possession to propose the protection method. *House Report,* at 338, U.S.Code Cong. & Admin. News at 6294. But Princess offers no alternative method to be used to adequately protect Big Bear, so the Court must conclude that relief must be granted given the lack of adequate protection. 11 U.S.C. §§ 362(d)(1), 363(d). In addition, the stay

must be lifted under the alternative standard stated in Section 362(d)(2), as the debtor has no equity in the property and it is not necessary to an effective reorganization since there is no evidence that there is a reasonable possibility of a successful reorganization. 11 U.S.C. § 362(d)(2). *See In Matter of Terra Mar Associates,* 3 B.R. 462, 466, 6 B.C.D. 150, 152 (Conn.1980).[3]

### D. BIG BEAR'S RIGHT TO SETOFF OF POST–PETITION OBLIGATIONS

■ The parties have also presented the question of whether Big Bear has any right to continue to exercise the privilege of setoff on obligations arising subsequent to the commencement of the reorganization proceedings.

It appears that the question, in part, deals with Big Bear's right to setoff the amounts due the debtor from post-petition collections made by Big Bear, against the obligations, such as the promissory note, due Big Bear when the case was commenced. Here Big Bear clearly has no right of setoff as to this pre-petition obligation and the corresponding post-petition obligation as no mutuality would exist. *See e. g., Mutual Trust Life Insurance Company v. Wemyss,* 309 F.Supp. 1221, 1232 n. 18 (Me. 1970).

■ The remaining question presented concerns itself with the right of setoff of exclusively post-petition debts which *are* mutual. The proper rule to be applied as to these obligations is not clearly stated in the Code. The Court, however, need not resolve this issue, for although mutual obligations do exist between the parties it has not been shown that a right of setoff has in fact matured with respect to these debts. That is to say, there has been no justification asserted which would occasion the

---

**1.** Here the promissory note is treated as an entirely unsecured obligation. If it were a secured claim, then before setoff could be allowed it would have to be determined if the collateral itself provided adequate protection under Section 362(d)(1). 11 U.S.C. § 362(d)(1).

**2.** Since no evidence has been offered on the question of solvency, then this Court is bound

by the presumption of insolvency contained in Section 553(c). 11 U.S.C. § 553(c).

**3.** While this Court is aware that this reorganization proceeding was converted to a Chapter 7 case on July 10, 1980, it must consider the merits of the motion based solely on the record before it at the time the matter was taken under submission.

right to setoff those obligations. *See High-smith v. Lair*, 44 Cal.2d 298, 302, 281 P.2d 865 (1955); *Advance Industrial Finance Co. v. Western Equities, Inc.*, 173 Cal.App.2d 420, 426–27, 343 P.2d 408 (1959). *See also* 4 *Collier on Bankruptcy, supra*, at § 553.06.

Undoubtedly the rights Big Bear has in receiving rent for its bakery space and on the promissory note created at the sale of the bakery equipment will be fully determined when final judgment is issued on the remaining issues reserved for trial on the complaint. Of course, the $7,500 payment made on May 2, 1980, will be credited in favor of Big Bear against any debts to Princess it incurred after the petition was filed.[4] And finally, Big Bear can deduct the rental assessment on the retail sales at the two retail outlets as this recoupment procedure was fully contemplated in the lease agreements and the rental is obviously a necessary cost of the administration of this case.

## IV

### CONCLUSIONS

1. On April 24, 1980, the date the petition was filed in this case there existed $11,974.64 in mutual obligations between Princess and Big Bear.

2. These mutual obligations formed the basis for the proper exercise of a setoff by Big Bear.

3. Since the Princess has not proposed a means to assure that Big Bear will be adequately protected as required under Section 362(d), then the automatic stay issued under Section 362(a)(7) must be lifted.

4. Big Bear may not offset mutual post-petition obligations, except for the 6.5% rental assessments on Princess' retail sales handled by Big Bear.

5. Big Bear shall prepare a proposed order within 10 days of the filing of this decision.

---

4. Any argument that Big Bear waived its right to any portion of this right of setoff by making this $7,500 payment is not well founded. Big Bear asserted its right to setoff and then as an

accommodation to the debtor advanced these funds so the debtor could make its payroll. This advance aided the debtor and cannot be taken as a waiver of any right of setoff.