**In re: BUCKLEY & ASSOCIATES INSURANCE, INC., Debtor.**

**James R. PARIS, Trustee, Plaintiff,**

v.

**TRANSAMERICA INSURANCE GROUP, Defendant.**

No. Civ–1–87–3.
Adv. No. 1–85–0173.

United States District Court,
E.D. Tennessee, S.D.

Sept. 22, 1987.

**156**

Harold L. North, Jr., Chattanooga, Tenn., for plaintiff.

Craig J. Donaldson, Nashville, Tenn., for defendant.

## MEMORANDUM

EDGAR, District Judge.

This is an appeal from an order of the United States Bankruptcy Court for the Eastern District of Tennessee, published at 67 B.R. 331 (Bkrtcy.E.D.Tenn.1986).

The facts of this case follow. In 1980, the insurance firm Buckley & Associates, Inc. (hereinafter "debtor") became an agent for the Transamerica group of insurance companies (hereinafter "creditor"). By May 1983, when debtor filed a bankruptcy petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–556 and 1101–1146, debtor owed creditor around $138,000 in insurance premiums for policies it had sold.

Debtor's Chapter 11 plan (Court File No. 2), which provided for debtor's pre-petition debt of $138,000.00 owed to creditor, was confirmed on January 9, 1984. The bankruptcy plan provided that creditor would receive preferred treatment under the plan in consideration for continued post-petition business dealings with debtor.[1] The plan provided that a failure to keep post-petition accounts current would be a default under the plan. The plan provided that the bankruptcy court would determine whether default under the plan had occurred and, if so, whether the Chapter 11 reorganization should be dismissed. The order confirming the plan (Court File No. 3) stayed all action by creditors to collect pre-petition indebtedness, including the $138,000 owed to creditor.

In accordance with the plan, debtor assumed its agency contract with creditor and in January 1984, entered into an additional profit sharing agreement (attached as exhibit 2 to Court File No. 11) for 1984.[2] In early 1985, creditor refused to pay debtor any profit sharing commission under the profit sharing agreement, arguing it had the right to write-off debtor's pre-petition debt of $138,000 against premiums collected by debtor. Without this write-off of pre-petition debt, creditor would have owed debtor between $11,000 and $12,000 in profit sharing commissions. It is this amount the trustee sought to collect below.[3]

In October 1985, this Chapter 11 was converted to a Chapter 7 proceeding. Both creditor and trustee filed cross motions for summary judgment[4] in the bankruptcy court. By the time the motions were considered, debtor had amassed a $52,000[5]

---

1. The plan provided that creditor would be paid in full with 10% interest for the first 18 months of the plan in advance of priority tax claimants and unsecured creditors, and granted creditor a lien against debtor's "book of business."

2. Debtor and creditor had entered into similar agreements in 1980 and 1983, but not 1981 and 1982.

3. This adversary action was filed by debtor on July 12, 1985. In October 1985, debtor's Chapter 11 was converted to Chapter 7 and the trustee was substituted for debtor as plaintiff in this proceeding.

4. This Court has been provided the motions (Court File Nos. 9, 10) but not the supporting briefs.

5. Trustee argues that at the time creditor refused to pay any profit-sharing commission, debtor was current on post-petition accounts. This appears to be the case, as the April 26, 1985 letter from creditor mentions only pre-petition arrearages. (Court File No. 14). Creditor's answer to trustee's interrogatory (Interrogatory No. 3, Court File No. 13) asking for the date or dates that the post-petition debt was incurred states only that $20,414.26 of the amount was delinquent "as of October 17, 1985," the date of the conversion to Chapter 7, well after creditor's

post-petition debt to creditor representing collected but unremitted post-petition premiums. The bankruptcy court ruled that creditor could not use the pre-petition debt as a write-off in the profit sharing formula to eliminate any profit sharing commission due, nor could creditor use the pre-petition debt as a direct set-off of its post-bankruptcy obligation to pay such commissions. The court also ruled that creditor could not justify its refusal to pay profit-sharing commissions under a recoupment theory, since recoupment can only arise out of a single contact and could not apply to the two separate (albeit interrelated) contracts (agency and profit sharing) in this case. Nonetheless, the bankruptcy court allowed creditor to retain the profit sharing commissions otherwise due by allowing creditor to set-off debtor's post-bankruptcy debt against the commissions.

## Standard of Review

This case involves primarily legal conclusions of the bankruptcy court. Consequently, review is under a *de novo* standard. *See, e.g., In re Morrell*, 42 B.R. 973 (N.D.Cal.1984).

## Discussion

The bankruptcy court considered three possible justifications for creditor's refusal to pay the profit sharing commissions at issue: (1) a write-off or set-off of debtor's pre-petition debt against the commission amount; (2) recoupment; and (3) a set-off of debtor's post-petition debt against the commission amount. These argued justifications will be considered *seriatim*.

A. *Write-off or set-off of debtor's pre-petition debt.*

■ The bankruptcy court ruled that creditor could not use debtor's pre-petition debt as a write-off to reduce the premium amount on which the profit sharing commission was figured, nor could creditor use

the pre-petition debt as a direct set-off against the commission amount otherwise due. The bankruptcy court is clearly correct, and this issue has not been argued on appeal. This appears, however, to have been creditor's motivation.[6] Whatever the post-hoc justification, creditor's actions constituted an attempt to collect a portion of debtor's pre-petition debt in direct violation of the bankruptcy court's order confirming the plan. Creditor's actions were antithetical to the spirit and purpose of the Bankruptcy Code, prejudicial to the reorganization plan, the hoped-for rehabilitation of the debtor, and the interests of other creditors.

B. *Recoupment*

■ The bankruptcy court also ruled that creditor was not allowed to rely on the theory of recoupment because the doctrine only applies to a single transaction, and could not be applied to the two separate agency and profit sharing contracts at issue. Creditor argues on appeal that this ruling was wrong. Creditor argues that because the profit sharing agreement "references and incorporates" the agency agreement, the creditor's obligation to pay profit sharing funds and debtor's obligation to pay premiums arises out of a single transaction.

The Court believes the bankruptcy court's decision was correct. The agency and profit sharing agreements, while related, are not part of a single transaction and consequently recoupment does not apply. *See, e.g., In re B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986); *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (Bkrtcy.M.D.Tenn.1981).

More importantly, the recoupment theory suffers the same defect as the write-off theory above, namely, it is an attempt to collect pre-petition debt in violation of the automatic stay and purpose of a bankruptcy plan. The profit sharing commissions due debtor arose from post-petition efforts.

obligation to remit any profit sharing commission accrued.

**6.** *See* April 26, 1985 letter of Jerry Yarbrough, Marketing Manager for creditor (exhibit 2 to Court File No. 14). "We feel as long as the

[pre-petition debt of] $130,733 is [sic] owed to Transamerica is delinquent, we are within our rights to deduct it." No mention is made in the letter of any accrued post-petition debt.

"A [creditor] may not, consistent with the policy of the Bankruptcy Code, withhold that which is due a debtor for post-petition efforts to satisfy a pre-petition debt." *In re Ohning*, 57 B.R. 714, 717 (Bkrtcy.N. D.Ind.1986). *See also In re Klingberg Schools*, 68 B.R. 173, 178 n. 3 (N.D.Ill. 1986). Recoupment does not apply under the facts of this case.

### C. *Set-off against post-petition debt.*

Although creditor's apparent motive for refusing to pay the profit sharing commissions was to improperly collect pre-petition debts, the bankruptcy court nonetheless allowed creditor to retain the commissions as a set-off against debtor's post-petition indebtedness. The Trustee argues that this determination impliedly reverses previous decisions of the bankruptcy court disallowing set-off of mutual post-petition debts. More importantly, trustee argues, debtor's post-petition debts did not accrue until after creditor's obligation to pay the profit sharing commissions.

■ This case presents the unusual situation of an attempted set-off during the administration of a Chapter 11 that is later converted to a Chapter 7. For purposes of analysis, the Court believes the appropriate analogy is to cases involving set-off during a Chapter 11, ignoring the conversion to Chapter 7 in this case. The refusal to pay profit sharing commissions that creditor seeks to justify occurred, after all, in the Chapter 11 phase of his case, some 10 months before the subsequent conversion.

■ Whether and in what circumstances a Court may allow the set-off of mutual debts arising during a Chapter 11 reorganization is not clearly stated by the Bankruptcy Code. *In re Princess Baking Corp.*, 5 B.R. 587, 591 (Bkrtcy.S.D.Cal. 1980). The Supreme Court has indicated, in the context of railroad reorganizations, that such set-off is generally inappropriate because it (1) grants a preference to a claim of one creditor over others and (2) is contrary to the purpose of a reorganization, which requires "the collection of amounts owed the bankrupt to keep its case inflow sufficient for operating pur-

poses, at least at the survival levels." *Baker v. Gold Seal Liquors*, 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974). The *Gold Seal* concerns apply to Chapter 11 cases. *Diversa-Graphics v. Management & Technical Co.*, 561 F.2d 725, 728 (8th Cir.1977). Set-off is permissible in Chapter 11, but only where it does not undermine the debtor's ability to reorganize. *In re Princess Baking Corp.*, 5 B.R. 587, 589–90 (Bkrtcy.S.D.Cal.1980); *Diversa Graphics v. Management & Technical Services Co.*, 561 F.2d 725, 728 (8th Cir.1977). The decision to grant or deny set-off is also guided by equity. *Diversa-Graphics* at 728; *Princess Baking* at 589.

The Bankruptcy Cout erred in allowing set-off under the facts of this case, for two reasons.

■ First, the trustee is certainly correct that set-off may not be used *prospectively*. A creditor may not ignore its current obligation to pay a debtor in anticipation of setting it off against some later debt. Such a rule would have the same deleterious effect on the success of reorganizations as would allowing creditors to ignore plans and collect pre-petition debts. In fact, prospective set-offs can act as self-fulfilling prophecy, guaranteeing the creation of post-petition debt by denying debtors the cash flow they need to survive. Yet, the bankruptcy court allowed creditor to do exactly that. It appears from the record that debtor owed no post-petition debt to creditor at the time creditor refused to pay the profit sharing commissions. *See supra* note 6. There was consequently nothing to set-off.

■ Second, to allow set-off in this case would violate the equitable principle that one should not benefit by his own wrongful act. As indicated, creditor's motive in withholding payment of the profit sharing commissions was the improper desire to collect a pre-petition debt. It is contrary to the interests of bankruptcy administration to allow creditors to commit acts they believe to be wrong in the hopes they can think up some proper justification later.

For the foregoing reasons, the order of the Bankruptcy Court granting creditor's motion for summary judgment will be VACATED, and this case REMANDED. On remand, the bankruptcy court will be directed to enter judgment for the trustee. An appropriate order shall enter.