In the Matter of AMERICAN SUNLAKE LIMITED PARTNERSHIP, Debtor.

Bankruptcy No. GG 89–01196.

United States Bankruptcy Court, W.D. Michigan.

Dec. 19, 1989.

James Engbers, Grand Rapids, Mich., for American Sunlake Ltd. Partnership, debtor.

Troy Taylor, and Brian Page, Grand Rapids, Mich., for Wilder Corp. of Delaware.

Perry Pastula, Wyoming, Mich., for unsecured creditors' committee.

## OPINION RESPECTING RECOUPMENT OR SETOFF

JAMES D. GREGG, Bankruptcy Judge.

### ISSUES

The issues before the Court are whether Wilder Corporation of Delaware ("Wilder") is entitled to utilize either (1) the equitable remedy of recoupment, or (2) setoff as governed by the Bankruptcy Code, to reduce the amount of liabilities it presently owes to the Debtor. The secondary issue before the Court is whether relief from the automatic stay imposed by 11 U.S.C. § 362 should be granted to permit the requested setoff or recoupment.

### JURISDICTION

This matter concerns the proposed netting against each other of debts owed to the estate and claims asserted against the estate. The Court finds jurisdiction exists pursuant to 28 U.S.C. § 1334 and this motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (G) and (O).

Although not raised by either party, this matter was brought before the Court by motion rather than by an adversary proceeding as required by Bankruptcy Rule 7001. Nevertheless, "this Court has the power to resolve this matter on the pleadings before it, 11 U.S.C. § 105, and find the characterization of the proceeding irrelevant in resolving this dispute ...". *In re Public Service Company of New Hampshire,* 107 B.R. 441 (Bkrtcy.D.N.H.1989). Because there was no procedural objection by either party, the Court will decide the issues. This opinion constitutes findings of fact and conclusions of law pursuant to B.R. 7052.

### FACTS

Wilder first granted a mortgage to certain real property involved in this dispute to Florida Federal Savings Bank ("Florida Federal") on July 3, 1985. The mortgage secured a commercial mortgage note executed contemporaneously in the amount of $2,050,000 by which Wilder promised to pay Florida Federal within five years. The note required interest to be paid using a variable interest rate. Wilder subsequently entered into negotiations which culminated in the sale of the real property to American–Sunlake Limited Partnership ("Debtor") on December 31, 1985. On the date of the sale, certain other documents were executed by and between the parties respecting the sale transaction. These documents were admitted into evidence and have been considered by the Court. (See Stipulation and Order Regarding Documents dated December 4, 1989.)

First, an Offer for Purchase of Property which established a total sale price of $4,475,000 and set forth all the respective rights and obligations was entered into by the Debtor and Wilder. That agreement also included provisions whereby the Debtor took the property subject to Wilder's obligation still owed on the first note and mortgage to Florida Federal, and acknowledged a balance outstanding of $2,023,000 at that time. The offer for purchase also contained a provision which allowed the Debtor to reconvey title to certain portions of the real property, i.e., Phases II and III, back to Wilder upon the nonoccurrence of certain conditions required to be performed by Wilder subsequent to the sale. That provision stated that if the Debtor reconveyed those portions of the real property

back to Wilder, the principal amount due on the Debtor's obligation would (1) be reduced by $800,000 and (2) any interest already paid that was allocable to the reconveyed real property would be retroactively credited to the Debtor as a further principal reduction.

Second, a Waiver and Consent Agreement among Florida Federal, Wilder and the Debtor was executed. In that document, Florida Federal waived the due on sale clause contained in the mortgage given by Wilder to it and consented to the sale to the Debtor. Florida Federal also consented to Wilder taking a second mortgage on the real property. All three parties agreed that Florida Federal's mortgage would be a first priority and Wilder's mortgage would be a second priority and subordinate to the mortgage of Florida Federal. The agreement also specified that Wilder would continue to be fully bound by its obligations under its note to Florida Federal and Maurice Wilder's (the president of Wilder) personal guarantee would continue in effect.

Third, a nonrecourse promissory note, dated December 31, 1985, from the Debtor to Wilder was executed. The Debtor promised to repay a loan in the principal amount of $1,952,000, with interest accruing thereon at the rate of 10½ percent per annum. This note contained a structured payment schedule consisting of layered and contingent payments payable in full within five years. This nonrecourse note was the largest of four separate notes signed by the Debtor to enable it to complete the purchase.

Lastly, the Debtor granted a second mortgage to Wilder regarding the real property to secure repayment of the four notes. This mortgage also expressly stated it was a second mortgage that was to be subordinate to the first mortgage held by Florida Federal.

After the purchase, the Debtor took possession of the real property, proceeded to make improvements to it, and operated the business of developing and selling individual lots in the mobile home development park. Due to the nonoccurrence of certain post-sale obligations of Wilder, the Debtor reconveyed Phases II and III of the real property development back to Wilder by a special warranty deed dated February 2, 1987. Wilder refused to accept the reconveyance. In March, 1987, Wilder attempted to reconvey the land to the Debtor by an unrecorded quit-claim deed. In an effort to determine its proper legal rights and remedies, the Debtor filed a lawsuit against Wilder in the Orange County Circuit Court, State of Florida, in April, 1987, (the "Florida court action").

In June, 1988, in the Florida court action, and at the Debtor's request, the Court created an escrow account. The Debtor paid the disputed portions due under Wilder's note into the escrow account. Prior to the establishment of the escrow account, the Debtor had paid two separate payments each month to Wilder during the months of February, March, April and May, 1988. During those months, one payment represented nondisputed obligations on Phase I and the other payment related to the dispute regarding Phases II and III. The Debtor continued to make all payments to Florida Federal and Wilder as they became due. The Debtor also paid the *ad valorem* real property taxes on the disputed real property in Phases II and III as they became due throughout the pendency of the Florida court action. Prior to filing the Debtor fully paid and satisfied a recourse note owed to Wilder in the amount of $300,000. The Debtor also paid two $250,000 payments, as required by the larger nonrecourse note.

On March 31, 1989, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101–1330. At the time of filing, the Debtor was not in default in the obligation owed to Florida Federal or Wilder. Although Wilder asserted that the Debtor had been in default, based upon the evidence before it, the Court finds that the March payment to Florida Federal was delinquent as of the filing date, but had not been declared in default. See Exhibit 5, Paragraphs 4 and 7. With regard to the Wilder mortgage, the Debtor was current inasmuch as the next mortgage payment to Wilder was not

due until March 31, 1989, the date the petition was filed.

After numerous adjournments by the parties, the Florida court action was tried in May and June, 1989, subsequent to this Court granting a limited modification of the automatic stay to allow the Debtor and Wilder to determine certain of their respective obligations, liabilities and remedies. The Florida court ruled in favor of the Debtor in August, 1989 and entered its Final Judgment on September 28, 1989. The Florida court held that (1) the Debtor had properly exercised its right to reconvey the land comprising Phases II and III to Wilder; (2) Wilder's attempted reconveyance was improper, ineffective, and a nullity; (3) the escrow account funds, plus all accrued interest, be released to the Debtor within thirty-five days (subject only to a contrary ruling by this Bankruptcy Court during that period); (4) Wilder must reimburse the Debtor for the disputed portions of the four monthly payments made to Wilder totaling $34,273.96; (5) Wilder must reimburse the Debtor for $8,449.50 in *ad valorem* real property taxes the Debtor had paid on the disputed Phases II and III for the period from its initial reconveyance back to Wilder until the filing of the bankruptcy petition; and (6) Wilder must pay costs and attorneys' fees in accordance with a provision of the purchase agreement. Pursuant to the Amended Final Judgment, the costs and attorneys' fees were determined to be $6,434.06 and $70,000 respectively.

## DISCUSSION

*Recoupment*

In considering Wilder's motion for recoupment, the Court looks at the standards for properly applying this doctrine. Recoupment is an equitable remedy that "should be narrowly construed as an exception to the general rule against preferring one creditor over another." *Electronic Metal Products, Inc. v. Honeywell, Inc.*, 95

B.R. 768, 770 (D.Colo.1989); *In re Public Service Co. of New Hampshire, supra.*

The first requirement in applying recoupment is there must be a *single* transaction between the debtor and the creditor who seeks recoupment. *In re Denby Stores, Inc.*, 86 B.R. 768, 782 (Bkrtcy.S.D. N.Y.1988). Wilder argues that the judgment amounts it was ordered by the Florida court to pay to the Debtor, and the payments from the Debtor to Wilder due under the second mortgage and promissory note, both arose out of the same purchase agreement. Therefore, Wilder argues that those obligations should be treated as arising out of a single transaction. For consideration of the recoupment motion only, the Court will assume that the amounts in question all arose out of a single transaction.[1]

The second requirement in applying recoupment is that there must be some form of overpayment to the debtor by the creditor, whether accidentally made, *In re B & L Oil Co.*, 782 F.2d 155, 159 (10th Cir.1986), or contractually made, *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (N.D.Tenn.1981). *See also, Denby Stores, supra; In re Public Service Co. of New Hampshire, supra.*

Wilder argues that the doctrine of recoupment does not require an overpayment of some type, citing *Rakozy v. Reiman Construction (In re Clowards, Inc.)*, 42 B.R. 627 (Bkrtcy.D.Idaho 1984). While the facts of *Clowards* do not involve an overpayment to the Debtor, the facts are totally inapposite to the matter before this Court. In *Clowards*, the creditors, who owed the debtor amounts due under uncompleted prepetition construction contracts, were allowed to recoup against those amounts the damages they suffered as a result of the breach of contract by the *debtor* in not completing the projects. *Clowards*, 42 B.R. at 628. In the case before this Court, it is *Wilder* who has created the damages suffered by the Debtor by *Wilder's* breach of contract. Further, Wilder seeks to recoup the judgment it owes the Debtor

---

1. Based upon its decision herein, the Court need not decide whether the single transaction requirement for recoupment has been met.

against funds which it has paid to a *third party*, i.e., Florida Federal, ostensibly on behalf of the Debtor.

The cases allowing recoupment that this Court has reviewed, and has found to be persuasive, all involve some variation of the theme that a creditor has paid or advanced to the Debtor more funds prepetition than have been earned by the Debtor as of the date of filing. *See, In re B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986) (recoupment allowed against amounts due on postpetition deliveries to recover inadvertent prepetition overpayments for previous oil deliveries); *In re Midwest Service & Supply Co.*, 44 B.R. 262 (D.Utah 1983) (recoupment allowed against amounts due for work continued postpetition on construction or repair contracts to recover excess progress payments made prepetition); *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (N.D.Tenn.1981) (recoupment allowed against postpetition royalties accrued to recover prepetition advance royalty payments made by debtor musician); *In re Mohawk Industries, Inc.*, 82 B.R. 174 (Bkrtcy.D. Mass.1987) (recoupment allowed against value of goods delivered postpetition to recover advance production payments made prepetition); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427 (Bkrtcy.S.D. N.Y.1982) (recoupment allowed against postpetition billings to recover prepetition medicare overpayments).

▪ The proceeding before this Court represents an entirely different set of factual circumstances. Indeed, Wilder has made *no* payment to the Debtor which would allow Wilder to recover against its judgment liability owed to the Debtor. Wilder asserts that the overpayments it has paid to Florida Federal total $121,-523.14. Wilder requests the Court to recoup that amount paid to Florida Federal postpetition against the liability it owes to the Debtor as established by the Florida court action.

The Court finds the doctrine of recoupment to be unavailable to Wilder for two reasons. First, payments made by Wilder to Florida Federal on the first mortgage resulted from Wilder's *independent* obligation to Florida Federal under its commercial mortgage note. This obligation was explicitly reaffirmed in the Consent and Waiver Agreement signed by First Florida, Wilder and the Debtor. Wilder was independently obligated to make the payments on the first mortgage after the Debtor ceased doing so. Wilder's payments to Florida Federal do not constitute an "overpayment" to the Debtor. The result of those payments is that Wilder's security in the mortgage property increases as Florida Federal's mortgage indebtedness decreases; to the extent that Wilder pays First Federal pursuant to its independent obligation, Wilder may be subrogated to, or may become an assignee of, First Federal's mortgage rights against the Debtor.

Second, recoupment is inappropriate because the Florida judgment in favor of the Debtor and against Wilder resulted from Wilder's breach of the original purchase agreement.[2] Inasmuch as the maxim "he who comes into equity must come with clean hands" applies, Wilder cannot use the judgment owed to the Debtor resulting from its own misdeeds to seek to utilize the equitable doctrine of recoupment.

> This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.

*Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945). To allow Wilder to recoup the judgment owed to the Debtor against the amount it has paid to Florida Federal would be to unjustly and inequitably reward Wilder to the detriment of the Debtor's ability to reorganize in this case.[3]

---

2. If Wilder had abided by the terms of the Offer for Purchase of Property, the Debtor would not have been compelled to institute the Florida court action; there would have been no damages incurred by the Debtor and Wilder would have had no liability.

3. The evidence supports the Debtor's assertion it has expended substantial money postpetition to

*Setoff*

Alternatively, Wilder has filed a motion to allow it to set off allegedly mutual obligations, i.e., its payments to Florida Federal against the Florida judgment it owes to the Debtor. "It is well-established that § 553(a) sets the outer limits of a creditor's 'narrow scope of right to setoff,' which may be further limited by the 'fundamental principal of bankruptcy law that distribution among creditors must be equal.'" *Orient River Investments v. Equibank (In re Orient River Investments, Inc.)*, 105 B.R. 790, 794 (Bkrtcy.E.D.Pa.1989); *In re TM Carlton House Partners, Ltd.*, 93 B.R. 859, 867 (Bkrtcy.E.D.Pa. 1988). To properly invoke the principle of setoff, three requirements must be met. The debt owed to the debtor and the claim asserted against the debtor (1) must be mutual obligations; (2) that arose from separate transactions; and (3) both must have been accrued prepetition. 11 U.S.C. § 553(a); *Lucier v. Kuhlman Electric Co. (In re K.I.T. Motor Express, Inc.)*, 106 B.R. 122, 123 (Bkrtcy.W.D.Ky.1989); *In re Morristown Lincoln–Mercury, Inc.*, 42 B.R. 413, 416 (Bkrtcy.E.D.Tenn.1984); *In re Fred Sanders Co.*, 33 B.R. 310, 311 (Bkrtcy.E.D.Mich.1983). "The application of setoff is permissive and lies within the equitable discretion of the Bankruptcy Court." *DuVoisin v. Foster (In re Southern Industrial Banking Corp.)*, 809 F.2d 329, 332 (6th Cir.1987).

In construing the circumstances in a light most favorable to Wilder, and only for purposes of considering Wilder's motion to setoff, the Court will again assume, without deciding, that all three conditions precedent to applying setoff have been met. Notwithstanding the Court's assumption that all three conditions of Section 553(a) have been satisfied, the Court now declines to modify the automatic stay imposed by Section 362(a)(7) to permit Wilder's asserted setoff rights. "Setoff is permissible in Chapter 11, but only where it does not

undermine the debtor's ability to re-organize." *Paris v. TransAmerica Insurance Group (In re Buckley & Associates Insurance, Inc.)*, 78 B.R. 155, 158 (E.D.Tenn. 1987).

At the hearing, the court heard very little testimony concerning the valuation of the real property in question. Nevertheless, based upon preponderance of the evidence before it, the court finds that there clearly exists a substantial equity cushion to provide adequate protection to Wilder. 11 U.S.C. §§ 361 and 362(d). Given the existence of adequate protection of Wilder's interest, relief from the automatic stay is not merited. *Big Bear Super Market No. 3 v. Princess Baking Corp. (In re Princess Baking Corp.)*, 5 B.R. 587, 589–591 (Bkrtcy.S.D.Cal.1980).

The original purchase price stipulated to by the parties was $4,475,000. (See Exhibit 3). The provisions of the offer for purchase agreement permitted the Debtor to reconvey Phases II and III, and also provided for a reduction in the principal balance of $800,000 upon reconveyance of the property. (See Exhibit 3, Paragraph V., Section 5.08). Therefore, the parties had contractually agreed that at the time of the purchase, the real property comprising solely Phase I (and excluding Phases II and III) had a value of $3,675,000. After the purchase the Debtor made certain improvements to the property including clearing the lake for residential use and the development of a recreational park. The Debtor also sold an additional 87 mobile home lots increasing the occupied number from 202 to 289 lots during this period. There is no testimony, or even an inference on the record, that the property in question has decreased in value since the purchase by the Debtor. Indeed, it may be likely that the value of the property has increased.

The principal balance owed to Florida Federal on its first mortgage was $1,856,500 as of the filing date, per the Court's

---

vindicate its rights against Wilder. The Debtor needs to recover its damages and expenses incurred from Wilder and utilize those funds to formulate and seek confirmation of its plan of reorganization. If the requested recoupment

would be permitted, Wilder would likely defeat the Debtor's ability to effectively reorganize as a result of Wilder's breach of contract and inequitable misconduct.

calculations. Postpetition interest on Florida Federal's first mortgage was approximately $18,000 per month. (Zdon testimony.) Since the filing date to the date of the hearing, Florida Federal's accrued interest would equal approximately $180,000. Therefore, the total first mortgage obligation owed to Florida Federal as of the date of the hearing, is approximately $2,036,500.

The Florida court action established that the outstanding balance owed on the second mortgage by the Debtor to Wilder was $754,925.80, pursuant to the Amended Final Judgment. Wilder's second mortgage accrues interest at 10½ percent per annum or an approximate amount of $6,600 per month. (Zdon testimony.) Since the filing date to the date of the hearing, Wilder's accrued interest on the second mortgage totals approximately $59,400. Therefore, the total indebtedness now owed to Wilder by the Debtor pursuant to the second mortgage is approximately $814,325.

The value of the real property in Phase I is approximately $3,675,000; the total obligations on the first and second mortgages, including accrued post-petition interest, is now approximately $2,850,825. Therefore, the Debtor's equity cushion appears to be at least $820,000. Because Wilder is oversecured and protected by a substantial equity cushion in the amount of approximately 29 percent, *Anchor Savings Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117 (N.D. Ga.1989); *In re Rorie*, 98 B.R. 215 (Bkrtcy. E.D.Pa.1989), the Court determines that Wilder's request to modify the automatic stay is inappropriate to allow setoff, even assuming Wilder has such a setoff right. *Heritage Savings & Loan Assoc. v. Rogers Development Corp. (In re Rogers Development Corp.)*, 2 B.R. 679 (Bkrtcy.E.D.Va. 1980) (15–20% equity cushion held to constitute adequate protection; relief from automatic stay denied). The Court finds that a substantial equity cushion, such as exists in this case, may adequately protect an oversecured creditor. 11 U.S.C. §§ 361, 362; *Princess Baking Corp.*, 5 B.R. at 590.

Further, as was discussed with regard to the requested recoupment relief, this Court strongly believes that Wilder's breach of contract and inequitable conduct prohibits it from seeking equity to obtain a setoff considering the facts of this case. See discussion at page 731, *supra*.

*Dissolution of Agreed–Upon Injunction*

On December 11, 1989, at the conclusion of the hearing, this Court entered an Order which prohibited the Debtor from seeking to enforce the Amended Final Judgment against Wilder, until December 20, 1989, or earlier pursuant to order of this court. The parties agreed to the entry of this order to preserve the status quo, for a short period of time, until this court could rule upon Wilder's contested motions. Because Wilder's motions have now been decided, the court hereby dissolves the agreed-upon injunctive order dated December 11, 1989. Said order shall no longer be of any force or effect.

### CONCLUSION

For the reasons stated above, the court denies Wilder's motion for recoupment. The court further denies Wilder's motion to setoff. Finally, the Court denies the implicit request of Wilder to modify the automatic stay imposed under 11 U.S.C. § 362(a)(7) to permit it to recoup or setoff, assuming arguendo that Wilder has any such rights. An order shall be entered accordingly.