**In re MOHAWK INDUSTRIES, INC., Debtor.**

**MOHAWK INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 4–84–00025G. Adv. No. 86–4086.**

United States Bankruptcy Court, D. Massachusetts.

June 5, 1987.

Joseph Reinhardt, Hendel, Collins & Newton, Springfield, Mass., for plaintiff/debtor Mohawk Industries.

Joseph Ackerstein, Asst. U.S. Atty., Boston, Mass., for U.S. (Defense Logistics Agency) defendant.

## OPINION

JAMES F. QUEENAN, Jr.,
Bankruptcy Judge.

This motion for summary judgment filed by the United States of America (the "government") raises what is apparently a novel question concerning interaction between the doctrines of setoff and recoupment in bankruptcy. Mohawk Industries, Inc. (the "Debtor") opposes the motion but makes no contention that there exists any genuine issue of material fact. The parties have stipulated to the facts, which may be simply stated.

The Debtor was a manufacturer of tents and other supplies, primarily for use by the armed forces. On March 31, 1983 the Debtor and the government, through its Defense Logistics Agency, entered into a contract (# DLA 100-3-C-4345) whereby the Debtor was to manufacture and sell to the government 13,323 general purpose tents. Delivery was to begin on September 9, 1983 and end on June 5, 1984; the final delivery date was later extended to March 31, 1985. Under the contract, the Debtor was entitled to progress payments which involved an advance by the government of a percentage of the Debtor's costs upon presentation of periodic invoices as to the costs accrued to date. These progress payments when made were "unliquidated." As the tents were delivered under the contract, the value of the tents was deducted from the unliquidated progress payments previously made, thereby "liquidating" them. On January 13, 1984, the Debtor filed a petition seeking relief under Chapter 11 (11 U.S.C. § 1101 et seq.). As of that date it had received $2,024,450.00 in advance payments and had delivered tents valued only at $138,300.00, leaving unliquidated progress payments of $1,886,150.00.

Neither party sought an order of this Court authorizing the Debtor to assume the tent contract. Both parties, however, continued the performance called for by the contract. After the January 13, 1984 Chapter 11 filing the Debtor, operating as a debtor in possession, received $2,014,-950.00 in progress payments and delivered tents valued at $2,501,466.00. The Debtor ceased operations in September of 1984. At that time it had delivered 4,803 of the 13,323 tents required under the contract. In April of 1985 the parties agreed to terminate the contract by reason of the Debtor's default. The government was able to sell materials associated with the contract for $177,271.26.

On August 4, 1984, or shortly thereafter, while the Debtor was in Chapter 11, the parties entered into an agreement entirely separate from the tent contract. The government accepted so-called Value Engineering Change Proposal (VECP) # 6383 with respect to another contract, DLA-100-82-C-4546, which the parties had previously executed involving the manufacture of backpacks by the Debtor and their sale to the government. This VECP that the Debtor submitted and the government accepted substituted an epoxy powder coated pack frame for a hard coat anodized pack frame. Under the parties' agreement concerning VECP # 6383, the government

agreed to pay the Debtor a royalty equal to 50% of the savings realized by the government for a three year period by reason of the VECP with all of its backpack contractors. As of May 16, 1986, the government had realized a total savings of $52,740.72 using VECP # 6383. The Debtor made demand for payment of $26,370.36. Having been refused payment, the Debtor filed the present complaint seeking judgment for that amount plus 50% of subsequent savings realized during the balance of the three year period.

The government asserts that it is relieved of its obligations under VECP # 6383 by reason of the fact that the tent contract, when viewed as a whole in light of events occurring both before and after the Chapter 11 filing, results in a net indebtedness due the government of $1,222,362.74. It seeks to recoup both prepetition payments and postpetition payments against postpetition shipments, and then setoff the resulting balance owed it against its postpetition obligation under VECP # 6383. The Debtor argues that the transactions occuring before the January 13, 1984 Chapter 11 filing must be segregated from those transpiring thereafter, and the government's attempted setoff is invalid because prepetition and postpetition obligations lack the mutuality that must be present for setoff to be permissible. We rule that the government is entitled to recoup the Debtor's prepetition obligations owed to it against its obligation owed to the Debtor for postpetition shipments, and that it may properly setoff the resulting balance owed it after recoupment against its obligations owed to the Debtor under VECP # 6383.

I. *Recoupment of Prepetition Progress Payments Against Postpetition Deliveries*

■ As developed at common law, the doctrine of recoupment permits the crediting of reciprocal rights against each other where those rights arose under the same transaction, typically the same contract. *Lee v. Schweiker,* 739 F.2d 870 (3rd Cir. 1984); Collier on Bankruptcy (15th ed.) § 553.03. The doctrine of setoff, on the other hand, allows the crediting of reciprocal rights which arise from different transactions. *Id.* The distinction between recoupment and setoff was recognized under the former Bankruptcy Act. *In re Monongahela Rye Liquors,* 141 F.2d 864 (3rd Cir.1944). Nothing in the legislative history of the present Bankruptcy Code indicates any intent to reject the right of recoupment or to ignore the distinction between it and setoff.

■ The distinction between recoupment and setoff is more than academic. Postfiling claims of a defendant arising from the same transaction or occurrence as a plaintiff's claim must be pleaded in defense or they are waived, except that a trustee or debtor may obtain leave of court to amend his pleading or commence a separate action. Bankruptcy Rule 7013. Perhaps more significant, in bankruptcy the ability of a defendant to credit a debtor's obligation to him against his obligation to the debtor can depend upon whether the defendant asserts his credit by way of recoupment or by way of setoff. If the two claims arise from different transactions so that the credit is necessarily asserted by way of setoff, a setoff of debts is permissible only if the two claims are mutual. 11 U.S.C. § 553. A creditor is not permitted to setoff the debtor's prepetition obligation to him against his obligation to the debtor which arose postpetition, because the two obligations lack mutuality. *Standard Oil Co. of New Jersey v. Elliott,* 80 F.2d 158 (4th Cir.1935); *Westinghouse Electric Corp. v. Fidelity & Deposit Co. (In re Enviro–Scope Corporation),* 63 B.R. 18 (Bankr.E.D.Pa.1986); *In re Shoppers Paradise, Inc.,* 8 B.R. 271 (Bankr.S.D.N.Y. 1980); *Framingham Winery, Inc. v. J.A.G., Inc. (In re J.A.G., Inc.),* 7 B.R. 624 (Bankr.D.Mass.1980); *In re Hill,* 19 B.R. 375 (Bankr.N.D.Tex.1982); *Big Bear Supermarket No. 3 v. Princess Baking Corp. (In re Princess Baking Corp.),* 5 B.R. 587 (Bankr.S.D.Cal.1980); *In re Howell,* 4 B.R. 102 (Bankr.M.D.Tenn.1980).

The ground often relied upon for this absence of mutuality is the view that the debtor in possession is a different entity

from the prepetition debtor. *See, e.g., In re Shoppers Paradise, Paradise, Inc., supra.* This rationale is no longer supportable, at least in such terms. The Supreme Court has rejected the new entity theory. In *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), the Supreme Court had this to say about the legal status of a Chapter 11 debtor in possession who seeks to reject a collective bargaining contract:

"Much effort has been expended by the parties on the question of whether the debtor is more properly characterized as an "alter ego" or a "successor employer" of the prebankruptcy debtor, as those terms have been used in our labor decisions ... We see no profit in an exhaustive effort to identify which, if either, of these terms represents the closest analogy to the debtor-in-possession. Obviously if the latter were a wholly "new entity," it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same entity which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing." *Id.* at 527–528, 104 S.Ct. at 1197.

We do not, however, regard this view of the status of a debtor in possession as a rejection of the rule that prevents setoff of prepetition debts against postpetition debts due to absence of mutuality. The raison d'etre for any bankruptcy law is to provide a discharge of debts in order to grant the debtor a fresh start. To permit the setoff of prepetition debts owed by the debtor against independent postpetition debts owed to the debtor would be a complete frustration of any fresh start. For our purposes in the present context, the right of the Debtor to a fresh start makes the Debtor sufficiently distinct from its former self so as to prevent the required mutuality. There is no question that the debt owed by the government under VECP # 6343 is a postpetition debt, having been created by a contract made after the filing. The government may not, therefore, setoff its prepetition debt owed it under the tent contract against the debt it owes the Debtor under VECP # 6343.

■ The government's rights under the doctrine of recoupment, however, are much different. It may recoup its claim for both prepetition and postpetition progress payments under the tent contract against the value of postpetition deliveries which the Debtor made to it under that same contract, even though the Debtor was never authorized by the Court to assume that contract pursuant to 11 U.S.C. § 365. Most courts that have considered this issue permit recoupment regardless of the occurrence of a bankruptcy filing and regardless of the absence of formal contract assumption by the Debtor. *In re Midwest Service and Supply Co., Inc.,* 44 B.R. 262 (D.Utah 1983); *Rakozy v. Reiman Construction (In re Clowards, Inc.),* 42 B.R. 627 (Bankr. D.Idaho 1984); *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bankr.S.D. N.Y.1982); *Waldschmidt v. CBS, Inc. (In re Jones),* 14 B.R. 309 (D.C.M.D.Tenn. 1981). They do so not because the debtor is held to have assumed the contract under § 365, but rather on the ground that if a debtor seeks the benefit of a contract it must take the burden under that contract as well, for much the same reason that § 365 permits assumption of an executory contract only if the debtor makes the other party whole and provides adequate assurance of future performance. Some of the cases present close questions as to whether the crediting of prefiling debt against postfiling debt is a proper recoupment under an amended or extended contract or an improper setoff because the two contracts are distinct. *See, e.g., Westinghouse Electric Corp. v. Fidelity & Deposit Co., (In re Enviro–Scope Corporation), supra.*

One court has confined the right to recoup prepetition obligations against postpetition obligations to situations where the postfiling debt is based upon prefiling services. *See Ohning v. Schneider National Transcontinental, Inc. (In re Ohning),* 57 B.R. 714 (Bankr.N.D.Ind.1986). We see no

reason for such a restriction. Even though a debtor performs all of his work under the contract after the filing, if he has received advances on the work before the filing it would be absurd to give him the right to a double payment. Basic concepts of fairness prohibit segregating the contract into its prefiling and postfiling elements so as to deny to the other contracting party the right of recoupment.

The government's right to recoup its prefiling tent contract advances against the Debtor's postfiling tent deliveries involves an analysis of the somewhat uncertain rights and obligations which accrue when a debtor in possession elects to proceed under an executory contract and yet does not seek court approval for its assumption. *See, generally,* Bordewieck, "The Postpetition, Pre–Rejection, Pre–Assumption Status of an Executory Contract," 59 Am. Bankr.L.J. 197 (1985). *NLRB v. Bildisco & Bildisco, supra,* in addition to permitting rejection of an executory labor contract, also prohibited the NLRB from prosecuting the debtor for failing to observe the terms of the contract during the period prior to rejection. The Court regarded the filing of unfair labor practice charges during that period as an indirect attempt at enforcing a contract which should remain unenforceable because it had not been assumed by the debtor. *Id.,* 465 U.S. at 527–33, 104 S.Ct. at 1196–99. One court interprets this aspect of the *Bildisco* decision as doing away with the doctrine of recoupment in situations such as that now before this Court, on the theory that the exercise of recoupment rights is equivalent to enforcement of a prefiling executory contract against a debtor in possession who has not assumed the contract. *See Hoffman v. State of Connecticut (Matter of Willington Convalescent Home, Inc.),* 39 B.R. 781 (Bankr.D. Conn.1984). We do not view the exercise of recoupment rights in these circumstances as amounting to the type of contractual enforcement barred by *Bildisco.* The Supreme Court there wanted to give the debtor a period of time within which to accept or reject the contract free of any right of enforcement by the other party, recognizing that the other party could seek a court order pursuant to § 365(d)(2) limiting the

time period within which the debtor could accept or reject. Here, rather than seeking to reject the contract, the Debtor has voluntarily tendered performance. All that the government seeks in recoupment is a credit for its previous payments against the Debtor's performance freely given. This involves no compulsion on the Debtor to perform in the first place. The court in *Bildisco* stated that in electing to receive benefits under the contract pending acceptance or rejection the debtor in possession is obligated to pay the reasonable value of those benefits. *Id.,* 465 U.S. at 531, 104 S.Ct. at 1198. Granting the other party recoupment rights for the fair value of benefits conferred is a logical corollary to this. We believe that *Bildisco* permits recoupment prior to assumption to the extent of the fair value of the benefits conferred upon the debtor. Here the benefits conferred were in the form of cash payments, so that their value is obvious.

The Debtor's reliance upon *In re Dartmouth House Nursing Home, Inc.,* 24 B.R. 256 (Bankr.D.Mass.1982), appeal dismissed on juris. grounds, 30 B.R. 56 (Bankr.App. Pan. 1st Cir.1983), is misplaced. In that case credit was sought for overpayments made before the filing on an entirely different contract, so that recoupment was not permissible. Nor do we regard *In re Monsour Medical Center,* 11 B.R. 1014 (W.D.Pa.1981) as relevant to the present question. There the debtor had assumed the contract with court approval; all of its obligations could therefore be regarded as postfiling obligations.

II. *Setoff of Postrecoupment Balance Due Government Under Tent Contract Against Amount Due Debtor Under VECP # 6383*

▮ There remains the ultimate question of whether the government may setoff the balance remaining due it under the tent contract, after the permitted recoupment, against its postfiling obligation due to the Debtor under VECP # 6383. Section 553 does not attempt to deal with the setoff of postfiling debts; it refers only to mutual debts which arose prior to the commencement of the case. Setoff of mutual postfiling debts, however, is generally allowed

despite the lack of any express statutory authorization. *In re Alfar Dairy, Inc.*, 458 F.2d 1258 (5th Cir.1972), *cert. den.* 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 501 (1972); *Matter of Fordson Engineering Corp.*, 25 B.R. 506 (Bankr.E.D.Mich.1982). We agree that a postfiling debt may be set off provided that it has mutuality with the other debt.

■ The Debtor argues that setoff is not permissible after recoupment, on the ground that the debt remaining after recoupment lacks the required mutuality with the postfiling VECP debt. The Debtor gives no basis for the asserted lack of mutuality. Perhaps it has in mind that the postrecoupment debt is almost as much the result of prefiling payments as it is of postfiling payments, and that because of this it should not be viewed in the same postfiling category as the VECP debt. The Debtor also seems to intimate that in order for the postrecoupment debt to have mutuality with the postfiling VECP debt, it is necessary that the postrecoupment debt be first allowed by the Court as a priority expense of administration under § 503(b)(1).

We conclude that the debt owed the government has the required mutuality with the VECP debt even though it has not been allowed, and even though it may not be allowable, as an administrative priority under § 503(b)(1). The most important consideration, to our mind, is that such a setoff does not run counter to the philosophy favoring a debtor's fresh start after discharge. The postrecoupment debt which the government seeks to setoff is quite distinct from the prefiling debts which the Debtor sought to discharge in its Chapter 11 filing. Rather than requesting a discharge of its tent contract debt existing at the time of the filing, the Debtor voluntarily tendered performance under that contract, receiving in turn further advance payments for tents yet undelivered. The postrecoupment debt cannot properly be classified as either postpetition or prepetition, being the result of advances made by the government during both periods. It is simply the result of recoupment rights which have been exercised with respect to the tent contract in its entirety. Permitting the government to set off this debt against the VECP debt is consistent with both the basic concept of fairness which underlies the doctrine of the setoff and the principle of bankruptcy law endorsing that doctrine.

We intend no intimation whatsoever that the government's remaining postrecoupment debt, after the allowable setoff with the VECP debt, is entitled to administrative priority under § 503(b)(1). That question is not before us, and our conclusion as to the availability of setoff does not depend upon any such priority. It may be that priority is not proper because the Debtor did not obtain court approval for its assumption of the contract. It would appear, also, that the nature of such postrecoupment debt, resulting as it does from both prefiling and postfiling payments, does not come within the intendment of § 503(b)(1) which speaks of "actual, necessary costs and expenses of preserving the estate." Moreover, the government has never sought priority, so that any prejudice to others resulting from the government's delay may present ground for denial of priority.

A separate judgment shall issue permitting recoupment and setoff in accordance with this opinion.