**In re BOB BREST BUICK, INC., Debtor.**

**BOB BREST BUICK, INC., Plaintiff,**

**v.**

**NISSAN MOTOR CORPORATION IN U.S.A., Defendant.**

Bankruptcy No. 91–13871–WCH.

Adv. No. 91–1398–WCH.

United States Bankruptcy Court, D. Massachusetts.

Sept. 4, 1991.

Hertz N. Henkoff, Barron & Stadfeld, Boston, Mass., for plaintiff/debtor.

Paul D. Moore, Choate, Hall & Stewart, Boston, Mass., for defendant.

**DECISION REGARDING (1) MOTION OF NISSAN MOTOR CORPORATION IN U.S.A. FOR RELIEF FROM STAY TO PERMIT RECOUPMENT OR, IN THE ALTERNATIVE, SETOFF AND FOR RELATED RELIEF AND (2) THE CAPTIONED ADVERSARY PROCEEDING**

WILLIAM C. HILLMAN, Bankruptcy Judge.

This matter comes before the Court by two converging routes. On July 17, 1991, debtor/plaintiff filed this adversary proceeding seeking turnover of property of the estate pursuant to 11 U.S.C. Secs. 541 and 542 (Count I) and for a declaratory judgment and damages for violation of the automatic stay (Count II). On July 21, 1991, in the principal case, Nissan Motor Corporation in U.S.A. ("Nissan") filed its motion for relief from stay to permit recoupment or setoff. The facts upon which the parties rely are the same in both instances.

A non-evidentiary hearing was held as to Count I of the adversary proceeding and the motion.

While there could be nice questions about which avenue was correct, *In re Public Service Co*, 107 B.R. 441, 444 (Bankr.D.N.H.1989), those issues are obviated by the issuance of this decision as applicable in both.

As to the adversary proceeding, the following will constitute findings of fact and conclusions of law as required by FRBP 7052.

The debtor ("Brest") is an automobile dealership. It acts as a dealer for Nissan products under an agreement dated June 26, 1989.

The agreement sets out in detail the relationship between the parties. As is usual in this context, there is a continuous stream of credits and debits between the parties. To simplify, Brest is obligated to pay Nissan for vehicles and parts purchased; Nissan owes Brest for warranty services performed and certain "incentive payments." Most of the accounting is handled through a "Non–Vehicle Account" which is to be balanced monthly, with the party owing required to settle at that time. There is also a "Vehicle Holdback Account" which is to be settled quarterly.

An audit in December, 1990, revealed that Brest had been overpaid $79,680.00 by Nissan. While Nissan alleges that there was some wrongdoing on the part of Brest which created the overpayment, Nissan's actions have waived any benefits which might have accrued to it otherwise in this proceeding. Condonation is applicable in the bankruptcy court as well as the court of domestic relations. In any event, Nissan and Brest agreed that the sum would be repaid in six monthly payments of $13,-280.00, commencing in January, 1991, although, under the agreement, Nissan had the right to claim the entire sum due at once.

When this case was commenced on May 3, 1991, Brest owed Nissan over $60,000 in addition to the remaining two payments of the overpayment. The filing did not result in an end to the business relationship; the parties continued to operate under the dealership agreement as if the filing had not intervened, except for the question of set-off or recoupment which is to be resolved today.

Meanwhile, on July 25, 1990, Brest assigned its rights to payment from Nissan to General Motors Acceptance Corporation ("GMAC"). In acknowledging the assignment on August 14, 1990, Nissan noted that Brest's account with Nissan

"is a net account, and any amounts due by Nissan to the dealer are accordingly automatically offset against any amounts due by the dealer to Nissan. If, after reconciliation of all amounts due by the dealer, there is a net amount owing to the dealer, Nissan will cause such amount to be paid to [GMAC] pursuant to the Assignment...." *Opposition of GMAC to Nissan Motion*, Exhibit A.

Nissan's position is simple. It views the relationship as a continuous one which permits recoupment by Nissan without regard to the pre- or post-petition timing of a particular financial event. Nissan, therefore, seeks to recoup from sums which it owes to Brest for post-filing events the sums which were due pre-filing, both generally arising under the agreement and the deferred payments as outlined above. In accordance with this position, it has refused to remit to Brest sums earned post-petition which, according to Brest, totalled approximately $70,000 as of July 1, 1991. Brest seeks a turnover of those funds.

*In re Mohawk Industries, Inc.*, 82 B.R. 174 (Bankr.D.Mass.1987), contains Chief Judge Queenan's extensive analysis of the doctrines of setoff and recoupment as applied to a contract which crosses the filing line. No purpose would be served in repeating the analysis here. We need only restate the conclusions:

First, that "to permit the setoff of prepetition debts owed by the debtor against independent postpetition debts owed to the debtor would be a complete frustration of any fresh start." *Id.* at 177.

Second, that a contracting party "may recoup its claim for both prepetition and postpetition progress payments under the ... contract against the value of postpetition deliveries which the Debtor made to it

*under that same contract,* even though the Debtor was never authorized by the Court to assume that contract. . . ." *Ibid.* (Emphasis added).

Nissan finds *Mohawk* fully applicable. Brest, on the other hand, would distinguish the case on the basis that the Nissan–Brest agreement

"is a personal service agreement which contemplates, not a single transaction, but a series of numerous transactions over an indefinite period of time. . . . Every month there are a multitude of transactions between the debtor and Nissan involving both the purchase and sale of vehicles and warranty and repair work performed by the debtor." *Objection of Brest to Nissan Motion,* Para. 4.

A similar position is taken by GMAC in its papers. *Opposition of GMAC to Nissan Motion,* Para. 4.

The Court cannot accept such a narrow reading of *Mohawk,* or of the facts of the present case. Notwithstanding that there were not fixed quantities of goods and services, each item arose from the single contract between the parties. Indeed, a comprehensive single agreement may not even be necessary if the relationship of the contracts is sufficiently close. In *Charter Crude Oil Co. v. Exxon Company (In re the Charter Company),* 913 F.2d 1575 (11th Cir.1990), there were five purchase, sale, and exchange contracts which, it was agreed by the parties, would be the subject of a net settlement. Some performance occurred prior to the filing, some followed it. The Circuit Court dismissed the anti-recoupment argument summarily:

"We find it unnecessary to engage in a detailed discussion of either the automatic stay provision or of Section 553 of the Bankruptcy Code. It is clear to us that the undisputed terms of the contractual relationship between the parties control. Exxon and CCOC had agreed to and operated in accordance with their net settlement agreement and on no other basis." *Id.* at 1578 (footnote omitted).

The court finds that recoupment is appropriate between Nissan and Brest.

GMAC argues that

"once the debtor assigned to GMAC the debtor's rights to payments by Nissan, the debtor and Nissan were powerless to enter into any agreement *impairing* the debtor's rights to those payments. . . . The December 1990 agreement purportedly authorizing Nissan to charge the debtor's Non–Vehicle Account $13,280.00 per month is thus a nullity, and cannot support a request for recoupment." *Opposition of GMAC to Nissan Motion,* Para. 2 (emphasis added).

There are several answers to this position, none favorable to GMAC's views.

First, the December agreement did not *impair* any rights of Brest. Brest had not been entitled to the sum in the first place. Indeed, Nissan had the right to deduct the amount in a lump sum, rather than permitting periodic payments, under Sec. 9(C)(1) of the Nissan agreement, quoted at *Response of Nissan to Opposition of Debtor and GMAC,* p. 17. The agreement which allowed repayment of the balance due to Nissan over time could have improved GMAC's position by creating interim balances in favor of Brest which would not otherwise have existed.

Second, the rights which Brest was able to assign to GMAC were those which arose under the Nissan–Brest agreement, and the effect of the attornment by Nissan, quoted above, is quite specific in that regard.

GMAC notes that a prior order of this court has held that any proceeds of the Nissan agreement are its cash collateral. *Opposition of GMAC to Nissan Motion,* p. 5. That being the case, any positive balance accruing to Brest as a result of this decision will be subject to the earlier order.

As a result of the above decision, Count II of the adversary proceeding is moot.

Counsel for Nissan will prepare orders consistent with this decision in accordance with Local Rule 43(A) as to both the adversary proceeding and the motion.