In re WANG LABORATORIES, INC., Debtor.

STEEL HECTOR & DAVIS et al., Plaintiffs,

v.

WANG LABORATORIES, INC., Defendant.

Bankruptcy No. 92–18525–WCH. Adv. No. 93–1081.

United States Bankruptcy Court, D. Massachusetts.

June 14, 1993.

See also 154 B.R. 392.

Andrew Z. Schwartz, David VanSpeybroeck, Foley, Hoag & Eliot, Boston, MA, for plaintiffs.

Louis A. Goodman, George A. Zimmerman, Julie L. Miller, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for defendant.

### DECISION ON MOTION FOR SUMMARY JUDGMENT

WILLIAM C. HILLMAN, Bankruptcy Judge.

Plaintiffs, the law firm of Steel Hector & Davis, and the equity partners of that firm (collectively "SH & D"), filed their complaint alleging that a computer system leased to SH & D prepetition by Wang Laboratories, Inc. ("Wang") failed to operate properly. SH & D has filed a proof of claim for its damages in the main case, *Complaint,* Ex. A. In this adversary pro-

ceeding, Count I seeks a declaratory judgment that SH & D

"can recoup certain scheduled payments allegedly due post-petition under the Agreement for Computer Hardware, Software, and Related Services (the 'Agreement'), the Master Lease Agreement (the 'Master Lease') [and other documents] based on SH & D's substantial pre-petition claim against Wang primarily arising under the Agreement and the Master Lease."

Count II requests a declaratory judgment that Wang has no right to terminate the Agreement and the Master Lease and Count III seeks a permanent injunction prohibiting termination.

Wang moved for summary judgment (the "Wang Motion"), claiming that, under the undisputed facts of the case, SH & D had expressly waived any right of recoupment that might exist.

FRCP 56(c), made applicable here by FRBP 7056, provides that summary judgment shall be granted

"forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The burden of proof is on the moving party to demonstrate the lack of a genuine issue of material fact. *United States Trust Co. v. Raritan River Steel Co. (In re American Spring Bed Mfg. Co.)*, 153 B.R. 365, 24 B.C.D. 265 (Bankr.D.Mass.1993), and cases cited.

The controlling law selected by the parties is that of Florida. *Agreement*, § 17.-14. Nothing presented to the Court indicates that Florida has any unique law applicable to this case. The lease transaction basic to the present litigation is governed by the Uniform Commercial Code ("UCC") as found in the Florida statutes. *See, e.g., Earman Oil Co. v. Burroughs Corp.*, 625

F.2d 1291 (5th Cir.1980); *Hi Neighbor Enterprises, Inc. v. Burroughs Corp.*, 492 F.Supp. 823 (N.D.Fla.1980).[1]

The facts appear to be completely undisputed; only the significance and interpretation of those facts is questioned. The statements of fact which appear below constitute the Court's findings of fact. Conclusions of law appear where appropriate.

This Court has previously held that a contracting party may recoup both its pre-petition and postpetition claims against payments due postpetition under the same continuing contract, even though the contract has not been assumed. *Bob Brest Buick, Inc. v. Nissan Motor Corp. (In re Bob Brest Buick, Inc.)*, 136 B.R. 322, 323–24 (Bankr.D.Mass.1991). *See also In re Mohawk Industries, Inc.*, 82 B.R. 174, 177 (Bankr.D.Mass.1987).

This result may, however, be modified by the terms of the contract between the parties. *Charter Crude Oil Co. v. Exxon Co. (In re the Charter Co.)*, 913 F.2d 1575, 1578 (11th Cir.1990), quoted in *Bob Brest, supra*. It is therefore necessary to determine the obligations of the parties as manifested by their agreement in the UCC sense, "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." Fla.Stat. § 671.201(3).

### The issue of assignment

Wang asserts that it has assigned the Master Lease and hence, pursuant to the terms of that document,

"... the rights of any assignee in and to the sums payable by the [sic] SH & D under any provisions of this Lease shall not be subject to any defense, setoff, counterclaim or recoupment whatsoever by reason of any damage to or loss or destruction of the System and Services [2] ... or by reason of any other indebted-

---

1. Florida has adopted Article 2A of the UCC, but effective only on January 1, 1991. The Agreement is dated December 30, 1988.

2. "Systems" and "Services" are defined terms. *Agreement*, §§ 1.39, 1.40.

ness or liability of Wang to the [sic] SH & D." *Master Lease* § 4.8.[3]

SH & D counters that there is no evidence of an assignment before the Court, but the Court finds as a fact that there was an assignment, evidenced in part by a letter of consent to the assignment executed by SH & D. *Wang Motion,* Ex. 5 (the "Consent Letter"). The same document indicates that SH & D had "notice of the terms of the assignment and the assignee" as required by the final sentence of § 4.8 of the Master Lease.

### *The possible internal conflict*

The Agreement and the Master Lease, the primary documents in the transaction, are integrated through the introductory language of the Master Lease which provides that

"in the event of any conflict between the provisions of this Lease and the Agreement the Agreement's terms shall govern." *Master Lease,* p. 1.

This language is bolstered by the provision in the Agreement that

"Notwithstanding anything contained in this Agreement, the Agreement (not including its schedules and exhibits [4]) shall govern in the event of any conflict between its terms and conditions and the terms and conditions of any schedule, exhibit or document relating to this Agreement of any kind whatsoever...." *Agreement,* § 17.28.

Turning to the Agreement, we find § 9.8.1.[5] For clarity, the Court has broken the section into lettered paragraphs in the following transcription:

9.8.1 *SYSTEM AND SERVICES LIMITATIONS.*

[A] EXCEPT AS PROVIDED IN THIS AGREEMENT, SH & D'S SOLE AND EXCLUSIVE REMEDY FOR ALL FAILURES OF THE SYSTEM OR SERVICES SHALL BE ALL OF ITS DAMAGES, EXCEPT FOR ANY CONSEQUENTIAL DAMAGES, UP TO THE ANNUAL COST OF THE LEASE PAYMENTS AND SERVICES GIVING RISE TO THE CLAIM.

[B] IF, HOWEVER, SH & D ELECTS, IN ITS SOLE DISCRETION AFTER A MATERIAL BREACH OR MATERIAL NON–PERFORMANCE BY WANG UNDER THE TERMS OF THIS AGREEMENT WITHIN FIVE YEARS OF THE EXECUTION DATE, TO RETURN THE SYSTEM, ALL ADDITIONAL COMPONENTS PURCHASED OR LEASED UNDER THIS AGREEMENT, AND COMPONENTS RECEIVED IN EXCHANGE FOR TRADE–INS AND ADDITIONAL PURCHASES AND/OR LEASES UNDER THIS AGREEMENT, SH & D SHALL RECEIVE THE AMOUNT OF THE LEASE PAYMENTS AND PURCHASE PRICE PAID FOR ALL OF THE RETURNED ITEMS AND SERVICES MADE THROUGH THE DATE OF RETURN.

[1] WANG SHALL ASSUME ALL OF SH & D'S PROSPECTIVE LEASE AND OTHER OBLIGATIONS, INCLUDING, WITHOUT LIMITATION, ALL PAYMENT OBLIGATIONS TO ANY PERSON OR ENTITY RELATING TO THOSE RETURNED ITEMS AND SHALL CAUSE SH & D TO BE RELEASED FROM ALL LIABILITY WHATSOEVER RELATED TO ALL OF THOSE OBLIGATIONS UNDER THIS AGREEMENT AND THE LEASE, EXCEPT FOR ANY LIABILITY WHICH RELATED TO ANY NON–FINANCIAL BREACH THAT OCCURRED PRIOR TO THE RETURN OF THE ITEMS DESCRIBED IN THIS SECTION AND ANY CONTINUING BREACH OF

---

3. The full text of Master Lease § 4.8 appears in the Appendix. Relevant portions will be quoted as needed throughout this opinion.

4. The parenthetical clause solves the problem which would otherwise have arisen from the fact that the Master Lease is Exhibit 1.20 attached to the Agreement and "All exhibits ... attached to this Agreement shall be deemed part

of this Agreement and incorporated into this Agreement, as if fully contained in it." *Agreement,* § 17.17.

5. There is also a "replacement remedy" with regard to failed components contained in § 9.9 of the Agreement, but it does not appear to have been invoked here.

THOSE NON–FINANCIAL OBLI-GATIONS AFTER THE RETURN, PLUS SH & D'S ACTUAL COST OF CONVERSION TO A NEW COMPUTER SYSTEM UP TO A MAXIMUM OF $100,000.

The Master Lease and Agreement provisions are not inconsistent. Given a material breach or non-performance, SH & D has two options. If it sues Wang for its damages, it must continue its payments to the assignee. Alternatively, SH & D can return all of the items, and Wang would assume "all of SH & D's prospective lease and other obligations." There is no patent ambiguity.

It is undisputed that SH & D has not returned, or tendered the return, of the goods.

### The effect of the letters and memorandum

■ The Court finds that the integrated language of the Agreement and the Master Lease is clear and unambiguous. It cannot, therefore, look beyond the written agreement to parol evidence to seek latent ambiguities. *Knabb v. Reconstruction Finance Corp.,* 144 Fla. 110, 197 So. 707, 715 (1940).

However, SH & D urges the Court to find that the Agreement and Master Lease were modified by a combination of three further documents: the Consent Letter from SH & D to Wang; what the parties call (and the Court shall describe as) the "Thank You Letter" from Wang to SH & D; and what SH & D calls the "smoking gun" but which the Court will simply call the "Guthlein Memorandum".

As a preliminary matter, the parties vigorously dispute whether SH & D's consent was necessary for the assignment. There is specific language in the Master Lease permitting the assignment:

"Wang ... may, at any time, assign its title to ... the lease payments and other sums at any time due and to become due, or at any time owing or payable, by SH

& D to Wang under any of the provisions of this Lease." *Master Lease,* § 4.8.

In contrast, there is a general provision in the Agreement that

"The rights, duties, covenants and obligations of either party to this Agreement may not be assigned, delegated or transferred to any other person or entity without the other party's prior written consent." *Agreement* § 17.13.

SH & D argues that its consent was required.

The short answer to SH & D's position is that even if the Agreement language controls, the provision of the Master Lease evidences the prior written consent required by § 17.13. It is not necessary to determine the issue.

Nevertheless, if the parties intended to amend the Master Lease or Agreement language, the memorandum and letters (discussed below) would control the preexisting waiver clause.

■ Wang argues that the documents cannot be amended in that manner because of the following language found in § 17.2 of the Agreement:

"No amendment to this Agreement shall be binding on either Wang or SH & D, unless the amendment is in writing and executed by both of them with the same formality as this Agreement."

Even without considering the theoretically most interesting issue of whether an amendment to the Master Lease is an amendment to the Agreement,[6] this argument must fail. A written contract can be modified by a subsequent oral agreement of the parties, even though the written contract purports to prohibit such modification. *Barile Excavating & Pipeline Co., Inc. v. Vacuum Under–Drain, Inc.,* 362 So.2d 117 (Fla.Dist.Ct.App.1978), and cases cited. If an oral amendment is proper, certainly an informal written one would suffice.

The Court must next consider whether the three documents collectively amount to an amendment.

---

**6.** *See Agreement,* §§ 17.17, 17.28.

Drawing together the relevant portions of the three documents, we extract the following in chronological order:

"It is not Wang's or Highline's [the assignee's] intent to modify or limit any of [SH & D's] rights or defenses provided in the original agreement ... We do intend to give Highline the undisputed right to receive any lease payments...." *Guthlein Memorandum* (an internal Wang document).

"Assignee's right to receive payments ... is subject to the terms and conditions of the Agreement ... including the Master Lease Agreement which is Schedule 1.20 of the Agreement." *Consent Letter*, SH & D to Highline.

"It is Wang's and Highline's intention that the Consent provide to Highline all of Wang's rights, title, and interest in the lease schedules referenced in the Consent, subject to your rights and other terms and conditions in the schedules and above referenced lease agreement...." *Thank You Letter*, Wang to SH & D.

The Court does not believe that these documents in any way modify the rights and obligations of the parties under the original documents and hence are irrelevant to consideration of the present motion.

### Conclusion

Having disposed of the confusion caused by the alleged modification, the Court returns to its conclusion regarding the rights available to SH & D.

■ SH & D has a right to proceed against Wang for damages caused by a material breach of the agreements between the parties, a right which it is seeking to vindicate by its proof of claim filed in the main case.

Alternatively, it could return all of the goods and pass its obligations to Highline on to Wang, but it has not done so.

Given these facts and conclusions of law, SH & D has no right to recoup Wang's alleged payments to it against lease payments to Highline. The motion for summary judgment must be granted as to Count I. Counts II and III are derivative from the claimed right of recoupment which the Court has rejected, and the motion is granted as to those counts as well.

An appropriate order will enter.

### APPENDIX

*Master Lease, § 4.8*

Wang or any of its assignees may, at any time, assign its title to the System and Services, excluding Software, its right under this Lease to the System and Services and/or to the lease payments and other sums at any time due and to become due, or at any time owing or payable, by SH & D to Wang under any of the provisions of this Lease. Except as provided in the Agreement and this Lease, SH & D and Wang agree that no assignee shall be obligated to perform any duty, covenant or condition required to be performed by Wang under any of the terms hereof, and the rights of any assignee in and to the sums payable by the SH & D under any provisions of this Lease shall not be subject to any defense, setoff, counterclaim or recoupment whatsoever by reason of any damage to or loss or destruction of the System and Services, or any part thereof, or by reason of any other indebtedness or liability of Wang to the SH & D. Any assignee shall otherwise enjoy all rights of Wang hereunder. It is further understood and agreed that Wang may from time to time grant a security interest in any or all of the components by means of a security agreement, conditional sales contract, chattel mortgage or similar agreement. In the event that separate assignments are executed by Wang of the Lease payments and other sums payable under this Lease, the Lease shall be deemed to be and shall be construed as a divisible and separate assignment, and the assignee shall be entitled to exercise all rights and remedies of Wang as to the System and Services covered by the assignment to said assignee. Any such assignment shall not diminish the obligations of Wang otherwise created by the Agreement and this Lease. SH & D

may not assign this Agreement or any Supplement hereunder without the prior written permission of Wang. No assignment of this Lease shall be effective until Wang provides SH & D with a written notice of the terms of the assignment and the assignee.