In re Thacher R. TURNER and
Anna E. Turner, Debtors.

Stephen & Joan MARDER, Movants,

v.

Thacher R. TURNER and Anna
E. Turner, Respondents.

Bankruptcy No. 93–20425.

United States Bankruptcy Court,
D. Maine.

Nov. 5, 1993.

Stephen & Joan Marder, pro se.

Benjamin P. Zuckerman, Verrill & Dana, Portland, ME, for debtor.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

This matter came before the Court on Stephen and Joan Marder's (the "Movants") motion for relief from stay. After due notice, an evidentiary hearing was held on September 8, 1993 and September 21, 1993, after which the parties submitted post-trial briefs and proposed findings of fact. Based on the testimony and the evidence submitted at trial and the pleadings submitted by the parties, this Court makes the following findings of fact.

## I. FACTS

1. In 1977, Thatcher and Anna Turner (the "Debtors") purchased the White Mountain Laundry (the "Laundry") and the Seavey Street Property (the "Property") located together in North Conway, New Hampshire. On May 9, 1984, the Debtors sold the Laundry to the Movants, and the Debtors leased that portion of the Property necessary for operation of the Laundry to the Movants (the "Lease").

2. As part of the sale of the Laundry and execution of the Lease, the Debtors represented to the Movants that the waste water treatment facility (the "Treatment Plant") was in compliance with environmental waste disposal regulations and state, federal, and local codes. The Movants relied upon these representations when purchasing the Laundry and executing the Lease.

3. As of May 9, 1984, the date of the closing, the Laundry was in violation of effluent limitations imposed by the Environmental Protection Agency. On May 9, 1984 the operation of the Treatment Plant was also in violation of additional state and federal regulations.

4. The Laundry was not as represented because it did not have a Treatment Plant that complied with state, federal, and local regulations.

5. Paragraph 10(c) of the Lease, which provided that the Movants shall pay for capital improvements required by the licensing authorities, assumed that the Treatment Plant was in full compliance on the date of the sale.

6. In 1985, the Debtors and Movants sued each other in the Carroll County, New Hampshire Superior Court (the "Trial Court"). As part of this suit, the Movants sought recovery from the Debtors for breach of warranty and misrepresentations as to the condition of the Treatment Plant on the premises of the Property.

7. In 1990, the Movants obtained a final judgment in the amount of approximately $225,000. Following entry of final judgment the Trial Court stayed execution and ordered the Movants to set off or recoup their judgment each month against rent otherwise due the Debtors. The Movants have setoff approximately $3,000 per month since June 1991.

8. On March 4, 1993 the Trial Court issued an order lifting the stay of execution. A sheriff's sale was scheduled for June 2, 1993. The obligation of the Debtors to the Movants is secured by a valid, perfected, unavoidable judgment lien on the Property.

9. The Debtors filed their Chapter 11 petition on June 1, 1993.

10. As of the date of the hearing on Movants' Motion for Relief From Stay (the "Hearing Date"), Debtors were indebted to Movants in the amount of $179,594.34.

11. As of the Hearing Date the Property was encumbered to the extent of $236,724.34 (including the Debtors' indebtedness to the Movants). The fair market value of the Property as of September 1, 1993 was $185,000.

12. As of the Hearing Date, operation of the Laundry remains in violation of the law. The Movants are subject to the risk that the EPA and/or the State of New Hampshire could issue a cease and desist order requiring

the Laundry to close. The New Hampshire Department of Environmental Resources has instructed the Movants to bring the Treatment Plant into compliance with the law.

## II. ANALYSIS

The Movants ask this Court for relief from stay to enforce their judgment lien against the real estate of the Debtors located on Seavey Street in North Conway, New Hampshire (the "Property"). The Bankruptcy Code provides two different grounds for terminating the automatic stay: (1) "For cause" pursuant to 11 U.S.C. § 362(d)(1), or; (2) If "the debtor does not have an equity in such property and such property is not necessary for an effective reorganization" pursuant to 11 U.S.C. § 362(d)(2). As discussed below, this Court finds that the facts of this proceeding support termination of the automatic stay on either ground.

### 1. 11 U.S.C. § 362(d)(1)—CAUSE

Section 362(d)(1) permits this Court to lift the automatic stay imposed by 11 U.S.C. § 362(a) for cause. The party opposing relief from stay has the burden of proof. See 11 U.S.C. § 362(g)(1) & (2). Cause sufficient to lift the automatic stay is not limited to a lack of adequate protection. *Matter of Nelson,* 66 B.R. 231, 234 (Bankr.D.N.J.1986); *Matter of Rye,* 54 B.R. 180, 181 (Bankr. D.S.C.1985); *In re Chirillo,* 84 B.R. 120 (Bankr.N.D.Ill.1988). Cause may exist for lifting the stay whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor or the debtor's estate. *Chirillo,* 84 B.R. at 123.

In the case at bar, because operation of the Treatment Plant remains in violation of the law, and because the State of New Hampshire has instructed the Movants to bring the Laundry into compliance, the presence of the automatic stay harms the Movants. The Movants are forced to choose between closing the Laundry or operating in violation of the law. If the automatic stay is lifted and the Movants can foreclose on their judgment lien, Movants can either obtain the Property (where they can borrow against it and repair the Treatment Plant or sell their business together with the Property) or Movants can obtain cash on the judgment lien which would permit the Movants to bring the Treatment Plant into compliance with the law.

Furthermore, lifting of the automatic stay would not harm the Debtors because they have not convinced this Court that they could effectively assume the Lease. This Court found that when the Laundry was purchased by the Movants on May 9, 1984, operation of the Treatment Plant was in violation of the law. In addition, it was found that the Debtors misrepresented the condition of the Treatment Plant to the Movants, and that the Lease presupposed that the Treatment Plant was in compliance with the law as of the date of the purchase and sale. The Debtors are therefore in material breach of the Lease and in order to assume the Lease they must first cure any default. *See* 11 U.S.C. § 365(b)(1)(A). The Debtors, however, have not provided this Court with sufficient evidence indicating that they could cure the defaults. Because of their inability to effectively assume the Lease, termination of the automatic stay would not harm the Debtors.

### 2. 362(d)(2) NO EQUITY AND NOT NECESSARY TO AN EFFECTIVE REORGANIZATION

In addition to permitting termination of the automatic stay "for cause," the Bankruptcy Code allows the automatic stay to be lifted under Section 362(d)(2) if the debtor has: (1) No equity in the property, and; (2) The property is not necessary to an effective reorganization. I will address both elements.

### A. Equity

The Movants have the burden of proving that the Debtors do not have equity in the Property. *See* 11 U.S.C. § 362(g)(1). During the evidentiary hearing, Movants demonstrated to the Court that the Property was encumbered to the extent of $236,724.34, and that its fair market value was $185,000. Based on this showing, this Court holds that there is no equity in the Property.

**4**

### B. Necessary for an Effective Reorganization

■ Upon request of a party in interest, the court can lift the automatic stay under 11 U.S.C. § 362(d)(2) upon a finding that the debtor's property is not necessary for an effective reorganization. The debtor has the burden of proof on this issue. *See* 11 U.S.C. § 365(g)(2). Courts have held that the burden is not satisfied by simply a showing that the property is essential or indispensable to the reorganization. *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 n. 7 (11th Cir.1984); *Acquisition Corp. of America v. Federal Savings & Loan Ins. Corp.*, 96 B.R. 380, 383 (S.D.Fla.1988); *In re Outlook/Century Ltd.*, 127 B.R. 650, 652 (Bankr.N.D.Cal.1991). Rather, the debtor or trustee must also prove a second point, that the planned reorganization is feasible. *United Savings Association of Texas v. Timbers of Inwood Forest Associates Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). ("there must be a reasonable possibility of a successful reorganization within a reasonable time.")

■ To prove feasibility the debtor must "do more than manifest unsubstantiated hopes for a successful reorganization." *Matter of Canal Place Limited Partnership*, 921 F.2d 569, 577 (5th Cir.1991). The debtor is not required to show that its plan for reorganization is confirmable. *Matter of East–West Associates*, 106 B.R. 767, 774 (S.D.N.Y.1989), on remand 110 B.R. 675 (S.D.N.Y.1990); *In re Ritz–Carlton of D.C., Inc.*, 98 B.R. 170, 172 (S.D.N.Y.1989). But, "[a] court may however analyze the debtor's plan 'using the feasibility test as a guidepost ... because the plan provides the basis for determining whether the debtor can successfully reorganize.'" *In re Ritz–Carlton*, 98 B.R. at 172 *quoting In re National Real Estate Limited Partnership II*, 87 B.R. 986, 991 (Bankr.E.D.Wis.1988).

■ Because the Debtors' Plan of Reorganization (the "Plan") includes unrealistic income estimates regarding rent due from the Movants, the Debtors' Plan is not feasible. In its ruling, the New Hampshire Superior Court permitted Movants to setoff or recoup their judgment each month against rent otherwise due the Debtors. Pursuant to this, the Movants have setoff approximately $3,000 per month since June, 1991. Therefore, despite the fact that the Movants have a valid judgment claim against the Debtors, the Debtors are asking this Court to rule that the Movants are not entitled to setoff the full amount of the rent due against the judgment and that the Movants must make regular rent payments to the Debtors.[1]

■ The doctrine of recoupment permits the Movants to withhold rent payments until their judgment is satisfied. Recoupment requires that the offsetting claims arise from the same transaction, and because recoupment is not affected by the filing of the bankruptcy petition, recoupment can be applied even though setoff may not be permitted. *In re B & L Oil Company*, 782 F.2d 155, 158 (10th Cir.1986); *Westinghouse Elec. Corp. v. Fidelity and Deposit Co. of Maryland*, 63 B.R. 18 (E.D.Pa.1986); *In re California Canners and Growers*, 62 B.R. 18 (9th Cir. BAP 1986). Further, bankruptcy courts apply recoupment as an equitable doctrine. *In re B & L Oil*, at 159.

In the instant case, the claim of the Movants against the Debtors and the obligations of the Movants to the Debtors under the Lease arise out of the same transaction. The Lease exists in conjunction with operation of the Laundry. The New Hampshire Superior Court recognized this interdependence, because after the Movants obtained a judgment against the Debtors that Court allowed the Movants to recoup their judgment against amounts otherwise due under the Lease. However, even if this Court prohibits the Movants from utilizing recoupment and determines that it would be equitable for the Debtors to fund a plan of reorganization, the Debtors have not shown the Court how they could fund the cost of curing defaults in the Lease in order to assume the Lease under 11 U.S.C. § 365(b)(1)(A).

---

1. For 1994, the Debtors' Plan projects total income to be $113,432. Of this amount, $25,232 is projected to be paid by Movants as rent.

Based on the foregoing, Stephen and Joan Marder's motion for relief from the automatic stay is granted.

The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

An appropriate order shall enter.