In re NORTHEAST EXPRESS REGION-AL AIRLINES, INC. and Precision Valley Aviation, Inc., Debtors.

NORTHEAST EXPRESS REGIONAL AIRLINES, INC., Plaintiff,

v.

NORTHWEST AIRLINES, INC., Defendant.

PRECISION VALLEY AVIATION, INC., Plaintiff,

v.

NORTHWEST AIRLINES, INC., Defendant.

Bankruptcies Nos. 94–20409, 94–20410. Adv. Nos. 94–2032, 94–2033.

United States Bankruptcy Court, D. Maine.

June 20, 1994.

George J. Marcus, Pierce, Atwood, Scribner, Allen & Lancaster, Portland, ME, Northeast Express Regional Airlines, Inc. and Precision Valley Aviation, Inc., for plaintiffs/debtors.

Gregory A. Tselikis, Bernstein, Shur, Sawyer & Nelson, Portland, ME, Local Counsel, for defendant Northwest Airlines, Inc.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

On May 28, 1994, Northeast Express Regional Airlines, Inc. (hereinafter "Northeast") and Precision Valley Aviation, Inc. (hereinafter "Precision") filed for relief under Chapter 11 of the Bankruptcy Code. On June 14, 1994, this Court granted a motion to consolidate both of these cases for adminis-

trative purposes. On June 6, 1994, plaintiffs Northeast and Precision (hereinafter "Debtors") filed separate complaints seeking a temporary restraining order against defendant Northwest Airlines, Inc. (hereinafter "Northwest"). The original complaints sought to enjoin and restrain Northwest from calculating Debtors' entitlement to revenue for passengers flown based upon what is called the "straight rate pro rate method." On June 8, 1994, Debtors amended these complaints and additionally sought to enjoin or restrain Northwest from acting to recoup pre-filing debt against any post-filing income due Debtors.

After reviewing the pleadings submitted by both parties, and after an evidentiary hearing, this Court finds the following facts:

## I. FINDINGS OF FACT

1. On May 2, 1989, and January 5, 1990, Northwest and the Debtors entered into identical Airline Services Agreements (hereinafter "the ASAs"). Under the terms of the ASAs the Debtors fly a commuter airline designated as "Northwest Airlink" that provides passenger traffic in New England for Northwest. The Debtors fly under Northwest's designation code, colors and logo.

2. The ASAs include provisions concerning monetary obligations between the Debtors and Northwest. Section 5.02 of the ASAs provides that Northwest will pay the Debtors for each passenger ticketed through Northwest that flies on one of Debtors' flights. Section 6.01 of the ASAs states that the amount Northwest reimburses the Debtors for these passengers will be based upon "the 'straight rate' prorate method." Furthermore, Section 11.01(A) of the ASAs states that "upon completion of twelve months service under this Agreement, either party may request in writing from the other party a renegotiation of the passenger revenue prorate arrangements specified in Section 6.01 ..." Debtors' Hearing Exhibit 4.

3. Section 5.03 of the ASAs provides that the Debtors will pay Northwest fees for items such as travel agent commissions, computer reservation service charges, and non-transportation charges. Section 5.03 also permits Northwest to "offset the aggregate amount of such undisputed [fees] against the wire transfer required to be made by Northwest on the date of the next scheduled wire transfer pursuant to Section 5.02 ..." Debtors' Hearing Exhibit 4.

4. Section 12.08 of the ASAs states that "[t]his Agreement shall constitute the entire agreement between the parties ..." However, Section 12.08 also provides that the parties may modify, supplement or amend the ASAs by "written agreement executed on behalf of the parties hereto by their duly-authorized representative subsequent hereto." Debtors' Hearing Exhibit 4. Beginning in October, 1990, Northwest and the Debtors entered into written amendments to the ASAs which provided for the payment of additional passenger revenue to the Debtors for limited periods of time. Defendant's Hearing Exhibits 15–26; Debtors' Verified Amended Complaint for Declaratory and Other Relief, p. 9, para. 43; Testimony of Neal Cohen. In these amendments, Northwest also agreed to defer payments due under the ASAs from the Debtors to Northwest for overpayments or previous deferrals made by Northwest to the Debtors. The amendments were each individually negotiated and the terms and conditions of each amendment varied from amendment to amendment. Testimony of Neal Cohen.

5. Northwest asserts that the Debtors owe it $9,844,192 from loans, deferrals and overpayments arising as a result of the amendments to the ASAs described above. Defendant's Trial Exhibit 31. This amount is contested. However, Debtors admit substantial sums are due Northwest.

## II. INJUNCTIVE RELIEF: STANDARD

█ In granting a temporary restraining order or preliminary injunction, the Court must be satisfied that:

1. The plaintiff is likely to succeed on the merits;

2. The plaintiff will suffer irreparable injury if the injunction is not granted;

3. The injury to the plaintiff outweighs any harm which granting injunctive relief would inflict upon the defendant; and

4. The public interest will not be adversely affected by the granting of the injunction. *Lancor v. Lebanon Housing Authority,* 760 F.2d 361, 362 (1st Cir.1985); *Spath v. National Collegiate Athletic Association,* 728 F.2d 25, 27 (1st Cir.1984). For purposes of this decision, this Court will address only whether Plaintiff is likely to succeed on the merits.

## III. ANALYSIS

■ Northwest maintains that it is entitled to recoup the debt that the Debtors owe Northwest pre-filing against the Debtors' post-filing revenues arising out of the ASAs. The Debtors' major argument against recoupment is that the pre-filing debt due Northwest is not an integral part of the ASAs, but rather an attempt to set off pre-filing debt not arising out of or associated with the underlying ASAs against Debtors' post-filing income. The Debtors argue, and this Court finds, that if Northwest were entitled to fully recoup the pre-filing debt against the post-filing revenues arising out of the ASAs, Debtors would be irreparably injured because they would be unable to reorganize under Chapter 11.

The doctrine of recoupment is well recognized in this Circuit. It permits the "crediting of reciprocal rights against each other where those rights arose under the same transaction, typically the same contract." *In re Mohawk Indus. Inc.,* 82 B.R. 174, 176 (Bankr.D.Mass.1987). Further, in the case of *United Structures of Amer. v. G.R.G. Engineering, S.E.,* 9 F.3d 996 (1st Cir.1993), Judge Breyer stated that recoupment is " 'in the nature of a defense' and is intended to 'permit … judgment to be rendered that does justice in view of the one transaction as a whole.' " *Id.* at 999; *quoting Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 299, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946). As such, "when a debtor in bankruptcy seeks to recover from a creditor whose claim against the debtor arises out of the same transaction, allowing the creditor to recoup damages simply allows the debtor precisely what is due when viewing the transaction as

a whole." *Id.* *See also In re Holford,* 896 F.2d 176, 178 (5th Cir.1990); *In re B & L Oil Co.,* 782 F.2d 155, 158 (10th Cir.1986); *In re Turner,* 161 B.R. 1, 4 (Bankr.D.Me.1993).

In *In re Bob Brest Buick, Inc.,* 136 B.R. 322 (Bankr.D.Mass.1991), the court recognized a business relationship between a creditor and the debtor as "a continuous one which permits recoupment by [the creditor] without regard to the pre- or post-petition timing of a particular financial event." *Id.* at 323. As a result, the court allowed the creditor to recoup from sums it owed to the debtor for post-filing events under the contract, the sums which the creditor was due from the debtor pre-filing under the same contract. *Id.*

■ For purposes of this decision, it will be unnecessary to address all four of the requirements for preliminary injunctive relief. This Court finds that as a matter of fact and law all sums due and owing Northwest pre-filing by Debtors have arisen from and are directly related to the ASAs, whether as a result of a) the deferment of payments due and owing Northwest by the Debtors, b) overpayments by Northwest to the Debtors or c) loans by Northwest to Debtors to be paid out of future payments under the terms of the ASAs. In view of current case law, these facts satisfy this Court that the principle of recoupment directly applies and, as a result, Debtors' entitlement to all post filing revenues due from Northwest under the terms of the ASA may be recouped by Northwest up to the amount of $9.84 million, reduced only by whatever adjustments Debtors may be entitled to.

Plaintiff must show at least a substantial possibility of prevailing on the merits. *See UV Industries, Inc. v. Posner,* 466 F.Supp 1251, 1256 (D.Me.1979) Debtors have not met this burden. Injunctive relief is denied.[1] The foregoing constitutes findings of fact and conclusions of law pursuant to F.R.Bankr.P. 7052. An appropriate order shall enter.

---

1. Because this Court holds that Northwest is able to apply the doctrine of recoupment, it is not necessary to address the other aspect of Debtors'

complaint regarding the appropriate level of reimbursement from Northwest to the Debtors.